IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

**No. 22-2399**

—————

**ROY L. WILLIAMS,**

**Appellant,**

**v.**

**SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS,**

**Appellees.**

—————

**BRIEF FOR APPELLEES**

—————

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA
ENTERED ON JULY 21, 2022

MICHELLE A. HENRY
*Acting Attorney General*

Office of Attorney General          BY:   ANTHONY T. KOVALCHICK
1251 Waterfront Place                      *Deputy Attorney General*
Mezzanine Level
Pittsburgh, PA 15222                       J. BART DELONE
Phone: (412) 565-2543                      *Chief Deputy Attorney General*
akovalchick@attorneygeneral.gov            *Appellate Litigation Section*

DATE: February 21, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.........................................................................iii

STATEMENT OF JURISDICTION ..........................................................1

STATEMENT OF ISSUES ........................................................................2

STATEMENT OF THE CASE ...................................................................3

      A.      THE CONDITIONS OF CONFINEMENT FOR DEATH-ROW INMATES.........3

      B.      THIS COURT'S DECISION IN *PORTER v. PENNSYLVANIA DEPT. OF CORRECTIONS*, 974 F.3d 431 (3d CIR. 2020)..................................................6

      C.      THE RECORD DEMONSTRATING THAT WILLIAMS WAS NOT KNOWN TO BE SERIOUSLY MENTALLY ILL BETWEEN 1992 AND 2019...............................6

      D.      WILLIAMS' ADMINISTRATIVE GRIEVANCES...............................12

      E.      THE PROCEDURAL HISTORY........................................................12

STATEMENT OF RELATED CASES.....................................................15

SUMMARY OF ARGUMENT.................................................................16

ARGUMENT .............................................................................................19

I.      THE DISTRICT COURT CORRECTLY HELD THAT SECRETARY WETZEL WAS SHIELDED BY QUALIFIED IMMUNITY......19

      A.      WILLIAMS' PERSONAL-CAPACITY CLAIM IS COMPLETELY FORECLOSED BY THIS COURT'S DECISION IN *PORTER*......................19

      B.      THE RECORD DOES NOT SUPPORT WILLIAMS' ASSERTION THAT SECRETARY WETZEL KNEW (OR SHOULD HAVE KNOWN) ABOUT HIS ALLEGED MENTAL ILLNESS..........................................................................21

II.    THE DISTRICT COURT CORRECTLY GRANTED THE DOC PARTIES' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO WILLIAMS' ADA CLAIM……………………………………………………29

   A. The DOC Did Not Violate Title II of the ADA…………..29

   B. Williams is Not Entitled to Monetary Relief…………..32

III.    THE DISTRICT COURT CORRECTLY DETERMINED THAT WILLIAMS HAD NO VIABLE CLAIMS UNDER THE FOURTEENTH AMENDMENT……………………………………………………………...37

  IV. LEAVE TO AMEND WOULD BE FUTILE………………………39

CONCLUSION ....................................................................................43

CERTIFICATE OF COUNSEL ..............................................................44

CERTIFICATE OF SERVICE ................................................................45

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alexander v. Sandoval*, 532 U.S. 275, 282-283 (2001) ...........................................32

*Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)...........................................36

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ...................................................27

*Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291, 296 (2006) ................................................................................................33

*Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ........................................................22

*Barnes v. Gorman*, 536 U.S. 181, 185-186, 189-190 (2002) ............................ 32-33

*Blunt v. Lower Merion School District*, 767 F.3d 247, 272 (3d Cir. 2014)............33

*Bowers v. National Collegiate Athletic Association*, 346 F.3d 402, 429-430 (3d Cir. 2003) ......................................................................................................32

*Brandon v. Holt*, 469 U.S. 464, 471-472 (1985) .....................................................29

*CG v. Pennsylvania Dept. of Education*, 734 F.3d 229, 236, n. 11 (3d Cir. 2013) .30

*Chavarriaga v. New Jersey Dept. of Corrections*, 806 F.3d 210, 225, n. 11 (3d Cir. 2015) ......................................................................................................42

*Clark v. Beard*, 918 A.2d 155, 160 (Pa. Cmwlth. 2007) .........................................21

*Clark v. Coupe*, 55 F.4[th] 167, 173, 182 (3d Cir. 2022) ..................................... 28-29

*Commonwealth v. Williams*, 660 A.2d 1316, 1322-1323 (Pa. 1995) ............... 15, 22

*Commonwealth v. Williams*, 732 A.2d 1167 (Pa. 1999)..........................................15

*Commonwealth v. Williams*, 846 A.2d 105, 110-111, 113 (Pa. 2004) .. 15, 26-27, 35

*Disability Rights New Jersey, Inc. v. Commissioner, New Jersey Dept. of Human Services*, 769 F.3d 293, 306 (3d Cir. 2015) ........................................................31

*Ex parte Young*, 209 U.S. 123 (1908).......................................................................41

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).........................................................6

*Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 74-75 (1992) ..............33

*Fuller v. Secretary of Defense of the United States*, 30 F.3d 86, 89 (8th Cir. 1994)41

*Furgess v. Pennsylvania Dept. of Corrections*, 933 F.3d 285, 291-292 (3d Cir. 2019) .................................................................................................................31

*Geness v. Administrative Office of Pennsylvania Courts*, 974 F.3d 263, 277-278 (3d Cir. 2020)........................................................................................................30

*Geness v. Cox*, 902 F.3d 344, 362, n. 13 (3d Cir. 2018).........................................33

*Geraci v. Moody-Tottrup, International, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).....36

*Haberle v. Borough of Nazareth*, 936 F.3d 138, 141 (3d Cir. 2019)......................33

*Haberle v. Troxell*, 885 F.3d 170, 182 (3d Cir. 2018).............................................35

*Hafer v. Melo*, 502 U.S. 21, 25 (1991) ....................................................................20

*Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) ..............................................19

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)....................................................20

*In re: Williams*, 782 Fed. Appx. 136 (3d Cir. 2019) (unpublished) .......................15

iv

*Jaludi v. Citigroup & Co.*, 57 F.4th 148, 153 (3d Cir. 2023) .................................40

*Johnson v. Pennsylvania Dept. of Corrections*, 846 Fed. Appx. 123, 129 (3d Cir. 2021) (unpublished) ...........................................................................................21

*Jones v. City of Detroit*, 20 F.4th 1117, 1122 (6th Cir. 2021) ...................................33

*Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 482-483 (3d Cir. 2019) .............................................................................................40

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ........................................................30

*Lavia v. Pennsylvania Dept. of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000) .....40

*Lutz v. Portfolio Recovery Associates, LLC*, 49 F.4th 323, 334-335 (3d Cir. 2022) 40

*Meachum v. Fano*, 427 U.S. 215, 225 (1976) ............................................................38

*Munchinski v. Solomon*, 618 Fed. Appx. 150, 155 (3d Cir. 2015) (unpublished) ...26

*Palakovic v. Wetzel*, 854 F.3d 209, 216, 223-224 (3d Cir. 2017) ................... 23, 28

*Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981) .............33

*Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 209-210 (1998) ........30

*Peterkin v. Jeffes*, 855 F.2d 1021, 1030 (3d Cir. 1988) ................................... 29, 35

*Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) ....................................................................................................................29

*Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) ......................................................22

*Porter v. Pennsylvania Dept. of Corrections*, 974 F.3d 431, 438-439, 450-451 (3d Cir. 2020) ................................................................................. 2, 6, 21, 35, 39-40

*Prieto v. Clarke*, 780 F.3d 245, 253-255 (4th Cir. 2015) ................................... 38-39

*S.H. ex rel. Durrell v. Lower Merion School District*, 729 F.3d 248, 264-267 (3d
   Cir. 2013) ...........................................................................................36

*Sandin v. Conner*, 515 U.S. 472, 484 (1995)...........................................................38

*Schmidt v. Creedon*, 639 F.3d 587, 598 (3d Cir. 2011) ...........................................27

*Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) ...................................................38

*Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) ...................................................23

*United States v. Florida*, 938 F.3d 1221, 1242-1243 (11th Cir. 2019) ....................33

*United States v. Georgia*, 546 U.S. 151, 157-159 (2006).........................................37

*Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635,
   645-646 (2002)....................................................................................41

*West v. Atkins*, 487 U.S. 42, 48-57 (1988)................................................................19

*White v. Pauly*, 580 U.S. 73, 79 (2017) (*per curiam*)...............................................26

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989) .......................40

*Williams v. Secretary Pennsylvania Dept. of Corrections*, 848 F.3d 549, 558-572
   (3d Cir. 2017) ................................................................................ 21, 38-40

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ...............................................................6

**Statutes**

28 U.S.C. § 1291 ............................................................................................1

28 U.S.C. § 1331 ............................................................................................1

28 U.S.C. § 1915(e)(2)(B)(ii) ............................................................. 13, 36

29 U.S.C. § 794a(a)(2) ........................................................................ 32-33

42 Pa. C.S. §§ 9541 *et seq.* ................................................................. 26

42 U.S.C. § 12132 ................................................................................ 30

42 U.S.C. § 12133 ................................................................................ 32

42 U.S.C. § 1983 .............................................................................. 1, 19

42 U.S.C. §§ 12101 *et seq.* ................................................................... 1

42 U.S.C. §§ 12131 *et seq.* .......................................................... 2-3, 12

42 U.S.C. §§ 2000d *et seq.* ................................................................ 32

50 P.S. § 7304 ....................................................................................... 6

61 Pa. C.S. § 4303 ............................................................................... 21

## Rules

FED. R. APP. P. 43(c)(2) ...................................................................... 14

FED. R. CIV. P. 25(d) ........................................................................... 13

## STATEMENT OF JURISDICTION

In this civil action brought under 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12101 *et seq.*], the United States District Court for the Eastern District of Pennsylvania exercised jurisdiction over the appellant's claims pursuant to 28 U.S.C. § 1331.  Since this appeal is from a final order entered on July 21, 2022, this Court's jurisdiction is predicated on 28 U.S.C. § 1291.  The notice of appeal was filed on July 27, 2022.

## STATEMENT OF ISSUES

1.      Can Appellant Roy Lee Williams hold former Secretary of Corrections John E. Wetzel personally liable for incarcerating him in solitary confinement prior to December 3, 2019, where this Court's decision in *Porter v. Pennsylvania Dept. of Corrections*, 974 F.3d 431, 450-451 (3d Cir. 2020), specifically declared that qualified immunity shielded Secretary Wetzel from similar Eighth Amendment claims for the period of time ending on September 1, 2020?

2.      Can Williams procure monetary relief under Title II of the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. §§ 12131 *et seq.*] without presenting evidence of intentional discrimination under circumstances in which the conditions of his confinement were solely attributable to his death sentence and had nothing to do with his alleged mental illness?

3.      Did Williams have a liberty interest in avoiding solitary confinement in the Capital Case Housing Unit even though his death sentence has never been reversed or vacated?

4.      Should Williams be granted leave to file an amended complaint despite the fact that his proposed "procedural due process" claims would not entitle him to any form of judicial relief?

## STATEMENT OF THE CASE

This case concerns allegations that the Pennsylvania Department of Corrections ("DOC") violated the Eighth and Fourteenth Amendments to the United States Constitution and Title II of the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. §§ 12131 *et seq.*] by housing a death-row inmate in solitary confinement pursuant to established state procedures.  The appellant, who was the plaintiff in the District Court, is Roy Lee Williams.  The appellees, who were defendants in the District Court, are former Secretary of Corrections John E. Wetzel (in his personal capacity) and Acting Secretary of Corrections Laurel R. Harry (in her official capacity).  Williams appeals the District Court's orders dismissing his Fourteenth Amendment claims and granting the DOC parties' motion for summary judgment with respect to his Eighth Amendment and ADA claims.

### A.    THE CONDITIONS OF CONFINEMENT FOR DEATH-ROW INMATES

Before 2018, inmates housed in the Capital Case Housing Unit at the State Correctional Institution in Greene County ("SCI-Greene") were permitted to engage in outdoor exercise activities five days per week.  JA157; ECF No. 24-3 at 2.  Each exercise session could last for as long as two hours.  JA157; ECF No. 24-3 at 2.  During each session, the inmates exercised in outdoor enclosures that kept them separated from one another.  JA157; ECF No. 24-3 at 2.  They were also kept

3

in separate enclosures when they visited SCI-Greene's law library.  JA158; ECF No. 24-3 at 3.  The inmates received their meals in their cells.  JA158; ECF No. 24-3 at 3.  Whenever they left their cells, the inmates were strip searched, restrained, and escorted by at least two corrections officers.  JA158; ECF No. 24-3 at 3.  They were not provided with opportunities to engage in activities in the facility's dayroom.  JA158; ECF No. 24-3 at 3.

Five death-row inmates housed in facilities operated by the DOC commenced a class action known as *Reid v. Wetzel* in the United States District Court for the Middle District of Pennsylvania on January 25, 2018, alleging that the DOC's procedures for housing death-row inmates contravened the Eighth and Fourteenth Amendments.  *Reid v. Wetzel*, Case 1:18-cv-00176-CCC, ECF No. 1. Around that same period of time, the DOC started to restructure the administration of its capital housing units.  JA157; ECF No. 24-3 at 2.  Michael Zaken, who served as the Deputy Superintendent of Facilities Management for SCI-Greene, led the restructuring process at that facility.  JA157; ECF No. 24-3 at 2.

A new policy governing the operations of SCI-Greene's Capital Case Housing Unit became effective on March 12, 2018.  JA161; ECF No. 24-3 at 6. Under the new policy, death-row inmates were permitted to engage in outdoor exercise activities seven days per week.  JA157; ECF No. 24-3 at 2.  In June 2018, the outdoor enclosures were reconfigured to allow inmates from the same pod to

congregate and exercise together.  JA157; ECF No. 24-3 at 2.  Death-row inmates

from the same pod were also permitted to congregate while visiting the law library.

JA158; ECF No. 24-3 at 3.  The inmates started to receive their meals outside of

their cells.  JA158; ECF No. 24-3 at 3.  When they left their cells to engage in

certain activities, the inmates were no longer strip searched, restrained, or escorted

by a minimum of two corrections officers.  JA158; ECF No. 24-3 at 3.  In addition,

the inmates were allowed to spend at least one hour in the dayroom each day.

JA158; ECF No. 24-3 at 3.  During those periods of time, inmates from the same

pod were permitted to play games, watch television, and socialize.  JA158; ECF

No. 24-3 at 3.

On November 18, 2019, the class plaintiffs and the DOC executed an

agreement providing for the settlement of the *Reid* case.  ECF No. 24-4 at 2-44.

The DOC agreed to loosen the restrictive conditions imposed on death-row inmates

and to provide them with more opportunities to socialize.  ECF Nos. 24 & 25 at ¶

7.  The agreement specifically provided that nothing contained therein could

constitute evidence of "liability, fault, or wrongdoing" on the part of the DOC.

ECF No. 24-4 at 3.  Pursuant to the terms of the settlement agreement, the DOC

issued a new policy statement on December 3, 2019.  ECF No. 24-5 at 2-18.  The

policy statement contained new procedures for housing death-row inmates.  ECF

No. 24-5 at 8-18.  In an order dated April 9, 2020, the United States District Court

for the Middle District of Pennsylvania formally approved the terms of the

settlement agreement. *Reid v. Wetzel*, Case 1:18-cv-00176-CCC, ECF No. 144.

**B.    THIS COURT'S DECISION IN *PORTER V. PENNSYLVANIA DEPT. OF CORRECTIONS*, 974 F.3d 431 (3d CIR. 2020)**

An Eighth Amendment claim challenging the conditions of a prisoner's

confinement contains both objective and subjective elements. *Wilson v. Seiter*, 501

U.S. 294, 298 (1991). The objective element is satisfied when an inmate shows

that he or she "is incarcerated under conditions posing a substantial risk of serious

harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In *Porter v. Pennsylvania

Dept. of Corrections*, 974 F.3d 431, 450-451 (3d Cir. 2020), this Court held that

qualified immunity shielded Secretary Wetzel from an Eighth Amendment claim

brought by a prisoner who had been sentenced to death and kept in solitary

confinement for thirty-three years. The decision in *Porter*, which was issued on

September 1, 2020, declared that existing precedent had not established that

"prolonged solitary confinement satisfie[d] the objective prong of the Eighth

Amendment test" in cases brought by inmates on death row. *Porter*, 974 F.3d at

450-451.

**C.    THE RECORD DEMONSTRATING THAT WILLIAMS WAS NOT KNOWN TO BE SERIOUSLY MENTALLY ILL BETWEEN 1992 AND 2019**

On April 19, 1979, Williams was involuntarily committed to the

Philadelphia Psychiatric Center ("PPC") pursuant to 50 P.S. § 7304. ECF No. 2-1

6

at 9, 12.  He was fourteen years old at the time of his admission to that facility.

ECF No. 2-1 at 9.  Williams' involuntary hospitalization was ordered because he

had, *inter alia*, assaulted his sister and threatened his mother with a knife.  ECF

No. 2-1 at 9.  He was discharged on June 21, 1979.  ECF No. 2-1 at 7.  Three to six

months after his discharge, Williams voluntarily returned to the PPC for ninety

additional days of inpatient treatment.  JA110-JA111; ECF No. 24-1 at 22.  He

participated in family therapy sessions for roughly one year after his second

hospitalization.  JA109; ECF No. 24-1 at 21.  Williams had "no psychiatric

history" for the next sixteen years.  JA294; ECF No. 28 at 3.

In 1992, Williams was convicted of murder and sentenced to death.  ECF

Nos. 24 & 25 at ¶ 2.  After spending some time in a county jail, Williams was sent

to the State Correctional Institution at Graterford ("SCI-Graterford") in December

1993.  JA099; ECF No. 24-1 at 11.  Williams was transferred to SCI-Greene

during the summer of either 1996 or 1997.  ECF Nos. 24 & 25 at ¶ 3.  Williams

remained at SCI-Greene until July 2020, when he was transferred to the State

Correctional Institution at Phoenix ("SCI-Phoenix").  JA100; ECF No. 24-1 at 12.

During his periods of incarceration at SCI-Graterford and SCI-Greene, Williams

was housed in the Capital Case Housing Unit.  ECF Nos. 24 & 25 at ¶ 4.

Every inmate entering the DOC's custody is given a psychological

evaluation that includes basic psychometric testing and an interview.  JA197; ECF

No. 24-3 at 42.  The psychometric testing is designed to screen all inmates in the areas of intelligence, achievement, personality, and emotional stability.  JA197; ECF No. 24-3 at 42.  Any inmate exhibiting evidence of a mental illness is provided with a more comprehensive assessment.  JA198; ECF No. 24-3 at 43.

On December 30, 1995, Williams was referred to a psychiatrist at SCI-Graterford due to manifestations of "depression and anxiety."  JA294; ECF No. 28 at 3.  Williams stated that his psychiatric history had been "limited" to his earlier visits to the PPC at the age of fourteen.[1]  JA294; ECF No. 28 at 3.  During an evaluation performed on January 29, 1996, "no mental decompensation or emotional problems" were found to be present.  JA294; ECF No. 28 at 3.

The DOC rates the mental health needs of inmates according to a four-point scale.  ECF Nos. 24 & 25 at ¶ 21.  An inmate is placed on the "A" Roster if he or she has no identified psychiatric or intellectual disability and no history of psychiatric treatment.  JA205; ECF No. 24-3 at 50.  If an inmate has a history of psychiatric treatment but no current need for further treatment, he or she is placed on the "B" Roster.  JA205; ECF No. 24-3 at 50.  An inmate is placed on the "C"

---

[1] According to the documentary record, Williams stated that he had been thirteen years old at the time of the visits.  JA294; ECF No. 28 at 3.  Nonetheless, the record of the hospitalization (which was attached to his complaint) indicates that Williams was actually fourteen years old at the time of his commitment to the PPC.  ECF No. 2-1 at 7.

Roster if he or she is currently receiving psychiatric treatment but has not been

diagnosed with a serious mental illness, a functional impairment, or an intellectual

disability and has not been deemed to be "guilty but mentally ill."  JA205; ECF

No. 24-3 at 50.  If an inmate is diagnosed with a serious mental illness, a credible

mental impairment, or an intellectual disability, he or she is placed on the "D"

Roster.  JA205; ECF No. 24-3 at 50.  A determination that an inmate has been

found to be "guilty but mentally ill" will also cause him or her to be placed on the

"D" Roster.  JA205; ECF No. 24-3 at 50.  Although Williams was on the "C"

Roster at some point during his incarceration, he was later moved to the "B"

Roster.  JA121, JA125-JA127; ECF No. 24-1 at 33, 37-38.

On July 3, 1996, during his period of incarceration at SCI-Graterford,

Williams attempted to commit suicide by "ma[king] a noose out of a sheet."

JA114, JA294; ECF No. 24-1 at 26; ECF No. 28 at 3.  Because of that suicide

attempt, Williams was placed in a psychiatric observation cell for two or three

days.  JA113-JA115; ECF No. 24-1 at 25-27.  The attending prison officials

removed Williams' clothes so that he could not use them to harm himself.  JA113-

JA114; ECF No. 24-1 at 25-26.  Williams was clothed in a paper gown and placed

in a hard cell with an indestructible mattress.  JA294; ECF No. 28 at 3.  His mental

condition was monitored and evaluated by mental health professionals while he

remained in the psychiatric observation cell.  ECF Nos. 24 & 25 at ¶ 30.

9

Williams told his attending physician and the other mental health professionals that he had not really tried to kill himself, and that he had only been "faking" a suicide attempt in order to get into another housing unit to make a telephone call.  JA114; ECF No. 24-1 at 26.  Although the physician offered to give Williams Prozac, Williams explicitly declined that offer and stated that he did not want to take any medications.  JA115; ECF No. 24-1 at 27.  Williams insisted that "nothing was wrong" with him.  JA115; ECF No. 24-1 at 27.  In a progress note dated July 5, 1996, a mental health professional reported that Williams was not depressed, and that he had merely "intended to manipulate the system" in order to be placed in the Mental Health Unit for telephone calls.  JA294; ECF No. 28 at 3.

Relying on Williams' statements, the relevant DOC officials removed Williams from the psychiatric observation cell and placed him in disciplinary custody for a period of six months.  JA114-JA116; ECF No. 24-1 at 26-28.  Although Williams resided in his usual cell during that six-month period, he was not permitted to keep his property inside of his cell.  JA115-JA116; ECF No. 24-1 at 27-28.  In addition, he was only permitted to visit the nearby prison yard by himself.  JA115; ECF No. 24-1 at 27.

Like every other capital inmate, Williams was free to request an appointment with a mental health professional at any time.  ECF Nos. 24 & 25 at ¶

26.  After his release from the psychiatric observation cell, however, Williams never sought further mental health treatment at SCI-Graterford.  JA116; ECF No. 24-1 at 28.

At SCI-Greene's Capital Case Housing Unit, a mental health professional made daily rounds and visited each inmate's cell.  JA159; ECF No. 24-3 at 4.  After his transfer to SCI-Greene in 1996 or 1997, Williams interacted with mental health professionals who walked by his cell but did not request appointments with those professionals.  ECF Nos. 24 & 25 at ¶ 34.  On one occasion in 2008 or 2009, Williams "had a minor case of heat exhaustion" while he was out in a prison yard.  JA117-JA118; ECF No. 24-1 at 29-30.  The situation caused Williams to have headaches.  JA118; ECF No. 24-1 at 30.  He was referred to the Mental Health Department for treatment.  JA117; ECF No. 24-1 at 29.  Two separate physicians visited Williams five or six times in order to address his concerns and alleviate his symptoms.  ECF Nos. 24 & 25 at ¶ 37.  During a conversation with a physician or therapist at SCI-Greene, Williams learned that he had been on the "C" Roster at one time, and that he had later been moved to the "B" Roster.  JA121, JA125; ECF No. 24-1 at 33, 37.  Like all other inmates at SCI-Greene, Williams was always free to request an individual appointment with a mental health professional at any time.  JA123, JA159; ECF No. 24-1 at 35; ECF No. 24-3 at 4.  He chose not to do so.  JA124; ECF No. 24-1 at 36.

11

### D.    WILLIAMS' ADMINISTRATIVE GRIEVANCES

In November 2020, Williams filed two administrative grievances relating to the conditions of his confinement prior to the implementation of the settlement agreement in the *Reid* case and the concomitant policy changes.  JA230, JA243-JA244; ECF No. 24-8 at 9, 22-23.  He requested monetary relief for alleged violations of the Eighth and Fourteenth Amendments and Title II of the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. §§ 12131 *et seq.*].  JA230, JA243-JA244; ECF No. 24-8 at 9, 22-23.  Williams repeated those requests for monetary relief in a third administrative grievance that he filed on February 24, 2021.  JA251-JA252; ECF No. 24-8 at 30-31.  All three grievances were administratively denied.  JA231-JA232, JA245-JA246, JA253-JA255; ECF No. 24-8 at 10-11, 24-25, 32-34.  Although Williams appealed those denials to final review, the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") ultimately dismissed those appeals and denied Williams' requests for monetary relief.  JA225, JA236, JA250; ECF No. 24-8 at 4, 15, 29.

### E.    THE PROCEDURAL HISTORY

Williams commenced this action against Secretary of Corrections John E. Wetzel in the United States District Court for the Eastern District of Pennsylvania on March 11, 2021, alleging violations of the Eighth and Fourteenth Amendments and Title II of the ADA.  JA043-JA049; ECF No. 2.  In his complaint, Williams

sued Secretary Wetzel in both his personal and official capacities. JA047; ECF No. 2 at 5, ¶ 17. The relief requested in the complaint was solely monetary in nature. JA049; ECF No. 2 at 7.

Acting pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the District Court dismissed Williams' official-capacity claim under the Eighth Amendment because it was barred by the Eleventh Amendment. JA005; ECF No. 7 at 2, ¶ 5, n. 1. The Fourteenth Amendment claims were dismissed because Williams was a convicted inmate rather than a pretrial detainee. JA005; ECF No. 7 at 2, ¶ 5, n. 1. The District Court also dismissed Williams' personal-capacity claim under the ADA because Secretary Wetzel (in his personal capacity) was not a "public entity" amenable to suit under Title II. JA005-JA006; ECF No. 7 at 2-3, & n. 2. Williams was permitted to proceed with his personal-capacity claim under the Eighth Amendment and his official-capacity claim under the ADA. JA017; ECF No. 34 at 9.

When Secretary Wetzel left his position on October 1, 2021, Acting Secretary of Corrections George Little became the new official-capacity defendant in this action. FED. R. CIV. P. 25(d). Secretary Wetzel remained in the case only to the extent that he had been sued in his personal capacity. JA041-JA042; ECF No. 33.

Acting Secretary Little and Secretary Wetzel filed a motion for summary judgment. JA041; ECF No. 23. In two separate scheduling orders, the District Court specifically advised Williams of his right to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d) if he needed additional evidence to oppose the pending motion. ECF No. 18 at 2, ¶ 6; ECF No. 21 at 2, ¶ 3. Williams did not file a Rule 56(d) affidavit. Instead, he filed a substantive response to the motion and did not indicate that additional discovery was needed. ECF No. 27.

Williams also filed a motion to supplement the record with a written summary of his medical records that had been drafted during a review completed by attorneys working for the Capital Habeas Unit of the Federal Community Defender Office for the Eastern District of Pennsylvania. JA292-JA295; ECF No. 28. The DOC parties did not oppose that motion. After the District Court granted the motion, the written summary was added to the record. JA008; ECF No. 35.

The District Court granted the DOC parties' motion for summary judgment on July 21, 2022. JA042; ECF Nos. 34-35. Williams filed a notice of appeal. JA001-JA002; ECF No. 37. Acting Secretary Harry became the new official-capacity appellee in January 2023, when she replaced Acting Secretary Little as the Acting Secretary of Corrections. FED. R. APP. P. 43(c)(2).

## STATEMENT OF RELATED CASES

The factual background of this case includes references to the settlement agreement that was executed and approved in *Reid v. Wetzel*, Case #1:18-cv-00176-CCC, which was a class action that had been commenced in the United States District Court for the Middle District of Pennsylvania. Williams' underlying conviction and sentence are not at issue in this appeal. In any event, the circumstances surrounding his conviction, sentence, appeals, and subsequent requests for post-conviction relief are discussed in *In re: Williams*, 782 Fed. Appx. 136 (3d Cir. 2019) (unpublished), *Commonwealth v. Williams*, 846 A.2d 105 (Pa. 2004), *Commonwealth v. Williams*, 732 A.2d 1167 (Pa. 1999), and *Commonwealth v. Williams*, 660 A.2d 1316 (Pa. 1995).

Williams filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania on August 25, 2004. Case #2:04-cv-04057-RBS, ECF No. 1. In an order dated January 7, 2005, the District Court stayed Williams' execution pending the resolution of the habeas corpus proceedings. Case #2:04-cv-04057-RBS, ECF No. 3. The habeas corpus case was later placed in civil suspense. Case #2:04-cv-04057-RBS, ECF No. 118. A motion to reactivate that case is currently pending before the District Court. Case #2:04-cv-04057-RBS, ECF No. 136. At the present time, Williams' death sentence "remains in place." JA010; ECF No. 34 at 2, n. 2.

15

## SUMMARY OF ARGUMENT

The District Court correctly concluded that Secretary Wetzel enjoys qualified immunity with respect to Williams' Eighth Amendment claim. This Court has already determined that qualified immunity shields Secretary Wetzel from Eighth Amendment claims brought by death-row inmates who were housed in the DOC's Capital Case Housing Units during the period of time relevant to this case. Secretary Wetzel had no reason to believe that Williams needed to be treated differently than any other death-row inmate. Under these circumstances, Secretary Wetzel is clearly entitled to qualified immunity.

In an effort to avoid the inevitable conclusion that Secretary Wetzel is entitled to qualified immunity, Williams asserts that the DOC knew that he suffered from a serious mental illness but nevertheless disregarded certain risks that solitary confinement would pose in his particular situation. Despite Williams' unsupported assertions, the evidentiary record contains no evidence which suggests that Williams was suffering from a serious mental illness at any point during his incarceration. Although Williams testified that he had tried to commit suicide in 1996, he also testified that he had told the attending mental health professionals and prison officials that he had merely "faked" a suicide attempt in order to get out of his cell and make a telephone call. From that point forward, Williams repeatedly denied that he needed mental health treatment and consistently stated

16

that he was all right.  The summary of Williams' medical records submitted in opposition to the DOC parties' motion for summary judgment later confirmed that he had no history of psychiatric treatment after 1996.

The District Court correctly granted the DOC parties' motion for summary judgment with respect to Williams' ADA claim.  Williams was housed in the Capital Case Housing Unit solely because he was on death row.  The conditions of his incarceration had nothing to do with his mental condition.  Moreover, Williams testified that he had been denied access to certain services, programs, and activities because of his death sentence.  He did not identify a single service, program, or activity that was available to other death-row inmates but unavailable to him.  Consequently, he cannot establish that he was denied access to a service, program, or activity *by reason of a disability*.  Even if Williams could establish a violation of the ADA, he would not be entitled to the monetary relief requested in his complaint because the record contains no evidence which suggests that the DOC intentionally discriminated against him.

Because Williams' death sentence has never been reversed or vacated, he did not have a liberty interest in avoiding the conditions of his incarceration in the Capital Case Housing Unit.  Thus, the District Court correctly dismissed Williams' freestanding Fourteenth Amendment claim with prejudice.  Given that Williams would not be able to establish his entitlement to judicial relief even if this Court

17

were to recognize the existence of a new liberty interest in this case, it would be futile to grant him leave to file an amended complaint.

Williams has already been provided with a full and fair opportunity to litigate his claims. Indeed, he was specifically advised of his right to file a Rule 56(d) affidavit if he needed additional information to defeat the DOC parties' motion for summary judgment. After Williams submitted a written summary of his medical records that failed to substantiate his allegations of a serious mental illness, the District Court properly granted the DOC parties' motion. The District Court's judgment should be affirmed in all respects.

# ARGUMENT

In his complaint, Williams sought only monetary relief.  JA049; ECF No. 2 at 7.  Williams testified that he was not challenging the current conditions of his confinement, and that the conditions underpinning his claims in this case had ceased to exist on December 3, 2019.  JA098, JA101-JA102; ECF No. 24-1 at 10, 13-14.  Therefore, the scope of this case is very narrow.  The only question for consideration is whether Williams is entitled to recover money damages from Secretary Wetzel or the DOC for the restrictive conditions of his confinement during the relevant period of time.  The District Court correctly answered that question in the negative.  JA009-JA037; ECF Nos. 34-36.

## I.   THE DISTRICT COURT CORRECTLY HELD THAT SECRETARY WETZEL WAS SHIELDED BY QUALIFIED IMMUNITY

**Standard of Review:**     Since this matter comes before the Court on appeal from the District Court's decision granting Secretary Wetzel's motion for summary judgment on the ground that he was entitled to qualified immunity, this Court's review of the District Court's decision is plenary.  *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

### A.   WILLIAMS' PERSONAL-CAPACITY CLAIM IS COMPLETELY FORECLOSED BY THIS COURT'S DECISION IN *PORTER*

Williams' Eighth Amendment claim against Secretary Wetzel is only cognizable under 42 U.S.C. § 1983.  *West v. Atkins*, 487 U.S. 42, 48-57 (1988).

Because Secretary Wetzel has been *personally* sued under § 1983 for actions taken under color of Pennsylvania law, he is entitled to assert the defense of qualified immunity based on his "objectively reasonable reliance on existing law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Under federal law, executive officials performing discretionary duties are "shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Given that Williams' claim is based on his conditions of confinement on or before December 3, 2019, the District Court properly concluded that, under this Court's prior decision in *Porter*, qualified immunity shielded Secretary Wetzel from liability in this case. JA030-JA032; ECF No. 34 at 22-24.

In a misguided effort to circumvent the holding in *Porter*—which clearly and unambiguously requires this Court to affirm the District Court's decision holding that Secretary Wetzel is entitled to qualified immunity—Williams inexplicably asserts that the fact that he "was in solitary confinement because of his death sentence is of no moment." Appellate ECF No. 18 at 40; Appellant's Brief at 31. The crux of Williams' argument is that the nature of his sentence has no direct relevance to his Eighth Amendment claim against Secretary Wetzel, or to Secretary Wetzel's entitlement to qualified immunity. That argument is wholly lacking in merit. Indeed, it is specifically foreclosed by this Court's decision in

20

*Porter.  Johnson v. Pennsylvania Dept. of Corrections*, 846 Fed. Appx. 123, 129 (3d Cir. 2021) (unpublished).  As this Court explained in *Porter*, the unconstitutionality of solitary confinement for death-row inmates was not clearly established prior to September 1, 2020.  *Porter*, 974 F.3d at 450-451.

Williams was initially placed in solitary confinement because of a statutory requirement.  61 Pa. C.S. § 4303.  Under the DOC policy existing before 2019, an inmate convicted of a capital offense and sentenced to death remained in the Capital Case Housing Unit unless or until his or her sentence was changed.  *Clark v. Beard*, 918 A.2d 155, 160 (Pa. Cmwlth. 2007).  The fact that the DOC's treatment of Williams was fully consistent with the policy in effect during the relevant period of time confirms Secretary Wetzel's entitlement to qualified immunity in this case.  *Williams v. Secretary Pennsylvania Dept. of Corrections*, 848 F.3d 549, 570-572 (3d Cir. 2017).  The District Court correctly applied this Court's decision in *Porter* and determined that Secretary Wetzel was shielded by qualified immunity.  JA030-JA032; ECF No. 34 at 22-24.

### B.    THE RECORD DOES NOT SUPPORT WILLIAMS' ASSERTION THAT SECRETARY WETZEL KNEW (OR SHOULD HAVE KNOWN) ABOUT HIS ALLEGED MENTAL ILLNESS

The United States Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of generality," since doing so typically sidesteps the dispositive question of whether the defendant "acted

reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014), quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). In a futile attempt to attack the District Court's proper application of *Porter*, Williams contends that the dispositive question is whether an incarcerated person with a known history of mental illness had a clearly established right to not be subjected to prolonged solitary confinement by an official who was aware of that history. Appellate ECF No. 18 at 32-33; Appellant's Brief at 23-24. That is not this case. Williams' framing of the relevant issue (and the specific right in question) improperly assumes the existence of facts that are not supported in the record and conveniently excludes facts that confirm Secretary Wetzel's entitlement to qualified immunity in this case.

Williams was convicted of first-degree murder and sentenced to death for fatally shooting a man on January 27, 1988. *Commonwealth v. Williams*, 660 A.2d 1316, 1322-1323 (Pa. 1995). He arrived at SCI-Graterford in December 1993. JA099; ECF No. 24-1 at 11. According to the documentary record submitted by Williams, he had "no psychiatric history" between his hospitalizations in 1979 and December 30, 1995, when he was referred to a psychiatrist at SCI-Graterford. JA294; ECF No. 28 at 3. During a psychiatric evaluation performed on January 29, 1996, Williams exhibited no evidence of mental decompensation or emotional problems. JA294; ECF No. 28 at 3. In other words, Williams has presented no

evidence of a mental illness during the eight years preceding the shooting, the

fourteen years preceding his arrival at SCI-Graterford, and the sixteen years

preceding his referral to the psychiatrist.

The subjective element of an Eighth Amendment claim "is satisfied when an

inmate shows that prison officials acted with deliberate indifference to the inmate's

health or safety," or to "conditions of confinement that violated the inmate's

constitutional rights." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020).  On July

3, 1996, Williams purported to attempt suicide by making a noose out of a sheet in

his cell.  JA113-JA114, JA294; ECF No. 24-1 at 25-26; ECF No. 28 at 3.  The

DOC officials at the scene removed Williams' clothes, draped him in a paper

gown, and moved him into a hard cell with an indestructible mattress.  Those

officials were not deliberately indifferent.  By aggressively acting to stop Williams

from harming himself, the DOC officials did exactly what they were supposed to

do in order to prevent Williams from committing suicide.[2]  *Palakovic v. Wetzel*,

854 F.3d 209, 223-224 (3d Cir. 2017).

---

[2] Williams appears to concede that the DOC properly provided him with
adequate medical care.  Appellate ECF No. 18 at 34; Appellant's Brief at 25, n. 6
(describing Williams' Eighth Amendment claim as "a conditions-of-confinement
claim challenging the solitary confinement of an individual with mental illness"
while specifically acknowledging that he is not bringing a "failure to protect"
claim or an "inadequate healthcare claim").

Williams remained in the psychiatric observation cell for two to three days. JA113-JA114; ECF No. 24-1 at 25-26.  When a psychiatrist arrived to evaluate Williams' mental status, Williams stated that he had not really tried to kill himself, and that he had merely faked a suicide attempt in order to get out of his cell to make a telephone call.  JA114-JA115; ECF No. 24-1 at 26-27.  The psychiatrist offered Williams a prescription for Prozac.  JA115; ECF No. 24-1 at 27.  Williams declined the offer and insisted that "nothing was wrong" with him.[3]  JA115; ECF No. 24-1 at 27.

As *Williams' own statements* had suggested, the DOC determined that Williams was not depressed, and that he had merely "intended to manipulate the system" in order to be in the Mental Health Unit for telephone calls.  JA294; ECF No. 28 at 3.  Believing that Williams had *faked* a suicide attempt in order to get favorable treatment (as he himself had claimed), the DOC placed Williams in disciplinary custody for a period of six months.  JA114-JA116; ECF No. 24-1 at 26-28.  Contrary to the unsupported assertions made in Williams' brief, the record contains no evidence which suggests that Secretary Wetzel (or anyone else associated with the DOC) *knew* that Williams had a "history" of attempting suicide

---

[3] The documentary record indicates that Williams "was not treated with psychotropic medications" during his first 1979 hospitalization.  ECF No. 2-1 at 10.  Consequently, there is *nothing* in the record which suggests that Williams has *ever* needed or received such medications.

24

at any time prior to December 3, 2019.[4]  Appellate ECF No. 32-33; Appellant's

Brief at 23-24.

As the District Court noted in its decision, it is not clear whether (or when)

the DOC received copies of declarations from Dr. Barry Crown and Dr. Robert

Fox opining that Williams was suffering from a mental illness in September 1996.[5]

JA012, JA035, JA051-JA061; ECF No. 2-1 at 48-58; ECF No. 34 at 4, 27.  Even if

it is assumed that the declarations were sent to the DOC (and that Secretary Wetzel

was personally aware of them), they could not have placed Secretary Wetzel (or

anyone else associated with the DOC) on notice that Williams was mentally ill.

---

[4] The suicide attempt that occurred on July 3, 1996, which Williams
described to prison officials as a "fake" suicide attempt designed to secure
favorable treatment, is the only suicide attempt established in the record.  The
documentary record of his first 1979 hospitalization indicates that Williams had
merely threatened (but had never actually attempted) to commit suicide at the age
of fourteen.  ECF No. 2-1 at 16 ("He never followed through on any of these
threats and never made a suicide attempt.").  Moreover, a progress note dated
August 8, 2002, stated that Williams had "no suicide attempts" in his past.  JA294;
ECF No. 28 at 3.

[5] In support of his assertion that copies of the declarations were provided to
the DOC, Williams cites a grievance that he filed on November 30, 2020, which
stated that copies of the declarations had been provided to "the prison's mental
health staff."  JA243-JA244; ECF No. 24-8 at 22-23 (cited at Appellate ECF No.
18 at 25; Appellant's Brief at 16).  Nonetheless, those declarations were not
mentioned in the summary of Williams' medical records that had been drafted
during a review completed by attorneys working for the Capital Habeas Unit of the
Federal Community Defender Office for the Eastern District of Pennsylvania.
JA292-JA295; ECF No. 28.

The declarations submitted by Dr. Crown and Dr. Fox were specifically prepared to support a petition under Pennsylvania's Post Conviction Relief Act ("PCRA") [42 Pa. C.S. §§ 9541 *et seq.*].  JA104; ECF No. 24-1 at 16.  During the PCRA proceedings, the statements made by Dr. Crown and Dr. Fox were specifically rebutted (and discredited) by contrary opinions expressed by Dr. Robert Sadoff and Dr. Thomas Swirsky-Sachetti.  *Commonwealth v. Williams*, 846 A.2d 105, 110-111 (Pa. 2004).  Dr. Sadoff and Dr. Swirsky-Sachetti both testified that Williams was not mentally ill.  *Id.* at 110.  In a subsequent decision denying Williams' PCRA petition, the trial court determined that the opinions expressed by Dr. Crown and Dr. Fox were not credible.  *Id.* at 113 ("It is evident from the trial court's opinion that it made credibility determinations as to the testimony of the mental health experts, and resolved the issue against Appellant.").  The Pennsylvania Supreme Court affirmed the trial court's decision in a published opinion issued on April 1, 2004.[6]  *Id.* at 107-115.

---

[6] This Court can take judicial notice of the record of Williams' PCRA proceedings.  *Munchinski v. Solomon*, 618 Fed. Appx. 150, 155 (3d Cir. 2015) (unpublished).  For purposes of this case, it makes no difference whether Williams was *actually* suffering from a mental illness during the relevant period of time.  The relevant question is whether it would have been *clear* to Secretary Wetzel that keeping Williams in solitary confinement was unconstitutional under circumstances in which the medical opinions underpinning Williams' alleged mental illness had been specifically discredited and rejected in a judicial proceeding.  *White v. Pauly*, 580 U.S. 73, 79 (2017) (*per curiam*) ("As this Court (continued….)

Secretary Wetzel is entitled to qualified immunity unless it would have been clear to a reasonable official that his conduct was unlawful in the precise situation that he confronted.  *Schmidt v. Creedon*, 639 F.3d 587, 598 (3d Cir. 2011).  An objectively reasonable official in Secretary Wetzel's position would not have changed Williams' housing arrangements in response to medical opinions that were specifically rejected in a judicial proceeding.  *Williams*, 846 A.2d at 110 (observing that the trial court had "opined that Appellant was not psychotic nor suffering from any cognitive impairment or significant mental illness").  There is nothing in the record which suggests that Williams was found to be suffering from a mental illness at any time after 1996.  Indeed, the written summary of Williams' mental health records makes no reference to such a diagnosis.[7]  JA 292-JA295.

Williams maintains that Secretary Wetzel should have known (or assumed) that he was mentally ill because of his placement on the "C" Roster.  Appellate ECF No. 18 at 25; Appellant's Brief at 16.  During his deposition, Williams testified that he had been on the "C" Roster at one time, and that he had later been moved to the "B" Roster.  JA121, JA125-JA126; ECF No. 24-1 at 32, 37-38.  It is

---

explained decades ago, the clearly established law must be 'particularized' to the facts of the case."), quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[7] The only post-1996 reference to Williams' mental health contained in the summary is a progress note suggesting that Williams seemed to be "worried and anxious" on August 8, 2002.  JA294; ECF No. 28 at 3.

not clear when that change occurred.  In any event, that question does not matter in this case.

Although an inmate's placement on the "C" Roster indicates that he or she "is currently receiving psychiatric treatment," it also indicates that he or she "is not currently diagnosed with" a serious mental illness, a functional impairment, or an intellectual disability.  JA205; ECF No. 24-3 at 50.  An inmate with an "identified history of psychiatric treatment" is placed on the "B" Roster if he or she has "no current need for psychiatric treatment[.]"  JA205; ECF No. 24-3 at 50.  Regardless of whether (or when) Williams was on the "C" Roster or the "B" Roster during the relevant period of time, it is clear that he was *never* classified as an inmate with a serious mental illness.

Since Williams was never categorized as an inmate with a serious mental illness, he is not comparable to the prisoner at issue in *Palakovic v. Wetzel*, 854 F.3d 209, 216 (3d Cir. 2017), who was on the "D" Roster, or to the prisoner at issue in *Clark v. Coupe*, 55 F.4th 167, 173 (3d Cir. 2022), who had been treated for schizophrenia and bipolar disorder for at least ten years and was known to be mentally ill.  As far as Secretary Wetzel knew, Williams was no different than any other inmate on death row.  *Porter*, 974 F.3d at 450-451.  For these reasons, this case does *not* involve "the right of a prisoner *known* to be *seriously mentally ill* to not be placed in solitary confinement for an extended period of time by prison

28

officials *who were aware of*, but disregarded, the risk of lasting harm posed by

such conditions." *Clark*, 55 F.4[th] at 182 (emphasis added).  Instead, it involves a

prisoner whose "emotional and psychological condition" was reasonably perceived

to be attributable solely to "the circumstance of living under a sentence of death,"

thereby leading Secretary Wetzel to the previously-approved conclusion that the

prisoner's alleged "psychological disturbances" did not render the conditions of his

confinement unconstitutional.  *Peterkin v. Jeffes*, 855 F.2d 1021, 1030 (3d Cir.

1988).

II.    THE DISTRICT COURT CORRECTLY GRANTED THE DOC PARTIES'
       MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO
       WILLIAMS' ADA CLAIM

**Standard of Review:**    Because this case is on appeal from a decision granting

the DOC parties' motion for summary judgment, this Court's review of the District

Court's decision is plenary.  *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954

F.3d 615, 618 (3d Cir. 2020).

A.    THE DOC DID NOT VIOLATE TITLE II OF THE ADA

A plaintiff seeking to proceed under Title II[8] of the ADA must establish that

he or she has been unlawfully denied the benefits of a program, service, or activity

---

[8] A judgment entered against a government official in his or her official
capacity imposes liability on the public entity that he or she represents.  *Brandon v.
Holt*, 469 U.S. 464, 471-472 (1985).  For this reason, Williams' official-capacity
claim against Acting Secretary Harry essentially constitutes a claim against the
(continued….)

*by reason of a disability.  Geness v. Administrative Office of Pennsylvania Courts*,
974 F.3d 263, 277-278 (3d Cir. 2020); 42 U.S.C. § 12132.  The record does not
contain *any* evidence which suggests that Williams was ever denied the benefits of
a service, program, or activity *by reason of a disability* (even if it is assumed that
he had such a disability in the first place).

    During his deposition, Williams testified that he and the other death-row
inmates housed in the Capital Case Housing Unit had been denied access to certain
programs *because of their death sentences*.  JA129-JA130; ECF No. 24-1 at 41-42.
In a subsequent affidavit, Williams declared that he had been excluded from
certain "correctional services and programs" at SCI-Phoenix because of delays in
the implementation of policy changes permitting "capital status prisoners" to use
the facility gym, chapel, and library.  JA291; ECF No. 27 at 4.  Williams' own
statements do not establish that his alleged "disability" played *any* role—let alone
a *determinative* role—in the DOC's decisionmaking process.  *CG v. Pennsylvania
Dept. of Education*, 734 F.3d 229, 236, n. 11 (3d Cir. 2013) (describing the
standard of causation that applies in ADA cases).

---

DOC.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The DOC is a "public
entity" covered under Title II.  *Pennsylvania Dept. of Corrections v. Yeskey*, 524
U.S. 206, 209-210 (1998).

Williams relies on this Court's decision in *Furgess v. Pennsylvania Dept. of Corrections*, 933 F.3d 285, 291-292 (3d Cir. 2019), to support his ADA claim. Appellate ECF No. 18 at 47, 50; Appellant's Brief at 38, 41. In *Furgess*, this Court held that a handicapped prisoner had alleged a violation of Title II by averring that his placement in a restricted housing unit ("RHU") had unlawfully denied him access to showers, since the RHU was not equipped with a handicapped-accessible shower facility. *Furgess*, 933 F.3d at 291-292. In that case, however, there was a clear nexus between the inmate's disability and his inability to shower. *Id.* at 291 ("They are requests for reasonable accommodations so that inmates with disabilities can take a shower—*just like able-bodied inmates*.") (emphasis added).

There is no such nexus in this case. Williams completely fails to articulate a *difference* between the manner in which the DOC housed him and the manner in which the DOC housed other inmates residing in the Capital Case Housing Unit. Appellate ECF No. 18 at 42-50; Appellant's Brief at 33-41. He was denied access to certain services, programs, and activities because of his death sentence—just like any other inmate on death row. JA129-JA130, JA291; ECF No. 24-1 at 41-42; ECF No. 27 at 4. His ADA claim fails for that reason alone. *Disability Rights New Jersey, Inc. v. Commissioner, New Jersey Dept. of Human Services*, 769 F.3d 293, 306 (3d Cir. 2015) (explaining that "a Title II claim must allege that a

31

disabled person has been denied some benefit that a public entity has extended to nondisabled people").

### B.    WILLIAMS IS NOT ENTITLED TO MONETARY RELIEF

Even if Williams could demonstrate that the DOC somehow violated his statutory rights under Title II, he would not be entitled to relief.  As discussed earlier, Williams seeks only *monetary* relief.  JA049; ECF No. 2 at 7.  Individuals aggrieved by violations of Title II may seek redress by invoking the remedies that are available under Title VI of the Civil Rights Act of 1964 ("Title VI") [42 U.S.C. §§ 2000d *et seq.*].  42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2).  In his complaint, Williams seeks awards of "nominal, compensatory, and punitive damages" against the DOC.  JA049; ECF No. 2 at 7.  Because punitive damages are not available in cases brought under Title VI, the United States Supreme Court has held that punitive damages may not be awarded to plaintiffs proceeding under Title II. *Barnes v. Gorman*, 536 U.S. 181, 189-190 (2002).  For this reason, Williams cannot recover punitive damages under any set of circumstances.  *Bowers v. National Collegiate Athletic Association*, 346 F.3d 402, 429-430 (3d Cir. 2003).

A plaintiff attempting to recover compensatory damages under Title VI must demonstrate that the defendant has engaged in "intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 282-283 (2001).  This rule applies with equal force to a request for nominal damages.  Title VI was enacted pursuant to

Congress' power under the Spending Clause. *Barnes*, 536 U.S. at 185-186. In

order "to be bound by 'federally imposed conditions,' recipients of federal funds

must accept them 'voluntarily and knowingly.'"[9] *Arlington Central School*

*District Board of Education v. Murphy*, 548 U.S. 291, 296 (2006), quoting

*Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981).

Consequently, Williams must demonstrate that the DOC engaged in "intentional

discrimination" in order to obtain *any* form of monetary relief. *Franklin v.*

*Gwinnett County Public Schools*, 503 U.S. 60, 74-75 (1992).

A plaintiff proceeding under Title II of the ADA may establish the existence

of intentional discrimination "with a showing of deliberate indifference." *Blunt v.*

*Lower Merion School District*, 767 F.3d 247, 272 (3d Cir. 2014). Under the

present circumstances, Williams must demonstrate that the DOC acted with

deliberate indifference to the risk of an ADA violation in order to recover money

damages. *Haberle v. Borough of Nazareth*, 936 F.3d 138, 141 (3d Cir. 2019);

*Geness v. Cox*, 902 F.3d 344, 362, n. 13 (3d Cir. 2018). He has not done so.

---

[9] Because Title II explicitly incorporates Title VI's remedial scheme
(through the provision of the Rehabilitation Act codified at 29 U.S.C. §
794a(a)(2)), the considerations limiting the remedies available under Title VI apply
with equal force to claims brought under Title II. *Jones v. City of Detroit*, 20 F.4th
1117, 1122 (6th Cir. 2021); *United States v. Florida*, 938 F.3d 1221, 1242-1243
(11th Cir. 2019).

In his brief, Williams makes reference to a letter sent from the United States Department of Justice ("DOJ") to Governor Tom Corbett on February 24, 2014. Appellate ECF No. 18 at 14-15, 49; Appellant's Brief at 5-6, 40. Although that letter expressed general concerns about the use of solitary confinement to house mentally ill prisoners, it did not specifically relate to death-row inmates. JA062-JA089; ECF No. 2-1 at 60-87. Moreover, the letter acknowledged that the DOC was "developing new policies" to reduce the number of mentally ill prisoners who remained in solitary confinement. JA062; ECF No. 2-1 at 60. During his deposition, Williams testified that changes in DOC policies had significantly improved the conditions of his confinement, and that he was not challenging any such conditions existing after a policy change that had become effective on December 3, 2019. JA098, JA101-JA102; ECF No. 24-1 at 10, 13-14. The changes acknowledged during Williams' deposition refute the language in his brief contending that the mere existence of the DOJ's 2014 letter establishes a failure on the part of the DOC to adequately respond to a pattern of past ADA violations. Appellate ECF No. 18 at 49; Appellant's Brief at 40.

Even if the letter could carry as much weight as Williams suggests, it would not satisfy his burden. Williams cannot establish that the DOC was deliberately indifferent to *his* situation merely by suggesting that there was a "generalized history" of ADA violations involving inmates whose circumstances were

34

materially different. *Haberle v. Troxell*, 885 F.3d 170, 182 (3d Cir. 2018). Since he was on death row, Williams was in a different category than most of the other inmates who were (allegedly) suffering from mental illnesses. *Porter*, 974 F.3d at 450. Inmates who are "psychologically disturbed" because of their death sentences cannot be easily compared to inmates who have preexisting mental illnesses that need to be addressed or accommodated. *Peterkin*, 855 F.2d at 1030.

Williams also argues that the DOC was subjectively "aware" of his mental illness but nevertheless exhibited deliberate indifference to his statutory rights. Appellate ECF No. 18 at 50; Appellant's Brief at 41. For the reasons discussed earlier, however, that argument has no evidentiary support. After his purported suicide attempt in 1996, Williams told the attending mental health professionals and prison officials that he had "faked" a suicide attempt in order to get out of his cell and make a telephone call. JA114, JA294; ECF No. 24-1 at 26; ECF No. 28 at 3. From that point forward, Williams *repeatedly* told the relevant mental health professionals and prison officials that he was all right. JA124; ECF No. 24-1 at 36. The contrary opinions expressed by Dr. Crown and Dr. Fox in 1996 were specifically rejected during the subsequent PCRA proceedings. *Williams*, 846 A.2d at 110-111, 113. Given that Williams was *never* on the "D" Roster, there is no evidence which suggests that the DOC ever believed that he was suffering from a serious mental illness. JA121, JA125-JA126; ECF No. 24-1 at 33, 37-38.

Furthermore, the written summary of Williams' medical records submitted to the

District Court made no reference to a psychiatric history postdating 1996.  JA294.

An entity cannot *intentionally* discriminate against an individual *because of*

a statutory disability without *knowing* that the individual is disabled.  *Geraci v.*

*Moody-Tottrup, International, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).  Because

Williams cannot make the required showing of intentional discrimination (through

a showing of "deliberate indifference" or otherwise), he would not be entitled to

monetary relief even if he could demonstrate that the DOC somehow violated his

statutory rights under Title II.  *S.H. ex rel. Durrell v. Lower Merion School*

*District*, 729 F.3d 248, 264-267 (3d Cir. 2013).  For these reasons, the District

Court properly granted the DOC parties' motion for summary judgment with

respect to Williams' ADA claim.  JA032-JA036; ECF No. 34 at 24-28.

III.    THE DISTRICT COURT CORRECTLY DETERMINED THAT
        WILLIAMS HAD NO VIABLE CLAIMS UNDER THE FOURTEENTH
        AMENDMENT

**Standard of Review:**    Since Williams challenges the District Court's order

dismissing his Fourteenth Amendment claims pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii), this Court's review of that order is plenary.  *Allah v. Seiverling*,

229 F.3d 220, 223 (3d Cir. 2000).

The District Court correctly determined that Williams could not assert a

freestanding Fourteenth Amendment claim against Secretary Wetzel because his §

36

1983 claim arose under the Eighth Amendment.[10]  JA005, ECF No. 7 at 2, ¶ 5, n. 1.

Although Williams concedes that he had no viable "substantive due process"

claim, he maintains that the District Court should have construed his allegations to

assert a cognizable "procedural due process" claim.  Appellate ECF No. 18 at 50-

57; Appellant's Brief at 41-48.  That argument has no support in this Court's prior

decisions.

Williams' argument is premised on his incorrect belief that the Due Process

Clause of the Fourteenth Amendment mandated periodic hearings in order to

determine whether it was still necessary for the DOC to house him in solitary

confinement.  Appellate ECF No. 18 at 53-57; Appellant's Brief at 44-48.  By

alleging that he was entitled to "due process" during his period of solitary

confinement, Williams completely overlooks (or fundamentally misapplies) the

applicable "standard for determining whether prison conditions deprive a prisoner

of a liberty interest that is protected by procedural due process guarantees."  *Shoats*

---

[10] Given that the Eighth Amendment's Cruel and Unusual Punishments
Clause applies to the States only because it is incorporated within the Fourteenth
Amendment, the Fourteenth Amendment technically provides the legal basis for
Williams' Eighth Amendment claim.  *United States v. Georgia*, 546 U.S. 151, 157-
159 (2006).  For this reason, the DOC parties use the term "freestanding
Fourteenth Amendment claim" to distinguish such a claim from the Eighth
Amendment claim that Williams brought against Secretary Wetzel.

*v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  No such liberty interest was implicated by the conditions of Williams' confinement.

Because the conditions of Williams' confinement during the relevant period of time fell "within the normal limits or range of custody" that had been authorized by his conviction and sentence, he did not have a liberty interest in removing himself from those conditions.  *Meachum v. Fano*, 427 U.S. 215, 225 (1976).  An inmate's conditions of confinement must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" in order to give rise to a liberty interest in avoiding those conditions.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Since the conditions of Williams' confinement were directly "tethered" to his death sentence, those conditions constituted a part of the "ordinary incidents of prison life" for him (and for all other inmates who had been sentenced to death and placed in the Capital Case Housing Unit).  *Prieto v. Clarke*, 780 F.3d 245, 253-254 (4th Cir. 2015).

In *Williams v. Secretary Pennsylvania Dept. of Corrections*, 848 F.3d 549, 558-570 (3d Cir. 2017), this Court clarified that an inmate *whose death sentence has been vacated* during a PCRA proceeding has a liberty interest in avoiding solitary confinement while he or she is waiting to be resentenced.  That rule applies with equal force to an inmate whose death sentence has been set aside by a federal

court during a habeas corpus proceeding.  *Porter*, 974 F.3d at 438-439.  Williams

does not fall into either of those two categories.

As the District Court observed in its decision granting the DOC parties'

motion for summary judgment, Williams' death sentence has never been reversed

or vacated.  JA010; ECF No. 34 at 2, n. 2.  Because Williams' death sentence

remained active for the entire period of time in which he was housed in solitary

confinement, he *never* had a liberty interest in being released from solitary

confinement during the period of time relevant to this case.  *Williams*, 848 F.3d at

569 (specifically distinguishing "inmates with active death sentences that arguably

require continued placement on death row" from inmates who "were no longer

being confined under a death sentence because their death sentences had been

vacated").  Accordingly, the averments contained in Williams' complaint could not

have been properly construed to allege an actionable violation of his procedural

due process rights.  *Prieto*, 780 F.3d at 253-255.

## IV.    LEAVE TO AMEND WOULD BE FUTILE

In an attempt to rescue his hypothetical "procedural due process" claims,

Williams requests the entry of an order remanding this case to the District Court so

that he can file an amended complaint.  Appellate ECF No. 18 at 57-58;

Appellant's Brief at 48-49.  Since Williams' claims (as described in his brief to this

Court) would clearly be meritless for the reasons discussed earlier, it would be

futile to grant him leave to amend.  *Jaludi v. Citigroup & Co.*, 57 F.4[th] 148, 153

(3d Cir. 2023).  The District Court's decision dismissing Williams' Fourteenth

Amendment claims with prejudice should be affirmed in all respects.  *Lutz v.

Portfolio Recovery Associates, LLC*, 49 F.4[th] 323, 334-335 (3d Cir. 2022).

     Even if this Court were to hold, for the first time, that an inmate with an

active death sentence had a liberty interest in avoiding his or her incarceration in

solitary confinement before December 3, 2019, Secretary Wetzel would clearly be

entitled to qualified immunity from any claims premised on the conditions of

Williams' incarceration prior to that date.  *Porter*, 974 F.3d at 450-451; *Williams*,

848 F.3d at 570-572.  State entities clothed with immunity under the Eleventh

Amendment are not "persons" amenable to suit under § 1983.  *Will v. Michigan

Dept. of State Police*, 491 U.S. 58, 70-71 (1989).  The DOC "shares in the

Commonwealth's Eleventh Amendment immunity."  *Lavia v. Pennsylvania Dept.

of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000).  Therefore, Williams cannot sue

the DOC (or Acting Secretary Harry in her official capacity) for any hypothetical

violations of his procedural due process rights.  *Jones v. Unknown D.O.C. Bus

Driver & Transportation Crew*, 944 F.3d 478, 482-483 (3d Cir. 2019).

     During his deposition, Williams testified that the prison conditions

underpinning his claims had ceased to exist on December 3, 2019.  JA101-JA102;

ECF No. 24-1 at 13-14.  He also testified that he was seeking only monetary relief.

JA096; ECF No. 24-1 at 8. Thus, this case is solely about the past; it is not about the future. Given that Williams has confirmed that no "ongoing violation of federal law" is present, he cannot seek prospective relief against Acting Secretary Harry under *Ex parte Young*, 209 U.S. 123 (1908). *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645-646 (2002). It would clearly be futile to grant Williams leave to assert hypothetical "due process" claims under circumstances in which judicial relief would be completely foreclosed. *Fuller v. Secretary of Defense of the United States*, 30 F.3d 86, 89 (8th Cir. 1994).

The District Court specifically advised Williams of his right to file a Rule 56(d) affidavit if he needed more evidence to oppose the DOC parties' motion for summary judgment. ECF No. 18 at 2, ¶ 6; ECF No. 21 at 2, ¶ 3, n. 1. Williams did not take that step. Instead, he submitted a written summary of his medical records that had been prepared during a review completed by attorneys working for the Capital Habeas Unit. JA292-JA295; ECF No. 28. That summary confirmed that Williams had "no psychiatric history" between 1979 and 1995, that his 1996 suicide attempt had been regarded as an effort to "manipulate the system" (because Williams himself had described it as such), and that the DOC had no indication that Williams was suffering from a mental illness at any point after 1996. JA294; ECF No. 28 at 3. In light of the fact that Williams has completely failed to establish his entitlement to judicial relief after having been afforded every

opportunity to fully litigate his claims, this Court should affirm the District Court's decision without remanding this case for further proceedings relating to claims that would plainly be lacking in merit.  *Chavarriaga v. New Jersey Dept. of Corrections*, 806 F.3d 210, 225, n. 11 (3d Cir. 2015).

## CONCLUSION

WHEREFORE, it is respectfully requested that the judgment of the District

Court be affirmed.

Respectfully submitted,

MICHELLE A. HENRY
Acting Attorney General

By:    /s/ Anthony T. Kovalchick

ANTHONY T. KOVALCHICK
Deputy Attorney General
Bar No. 89056 (Pa.)

J. BART DELONE
Chief Deputy Attorney General
Appellate Litigation Section

Office of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
Phone: (412) 565-2543
akovalchick@attorneygeneral.gov

DATE: February 21, 2023

## CERTIFICATE OF COUNSEL

I, Anthony T. Kovalchick, Deputy Attorney General, hereby certify as follows:

1.  That I am a member of the bar of this Court.

2.  That the text of the electronic version of this brief is identical to the text of the paper copies.

3.  That a virus detection program was run on the file, and that no virus was detected.

4.  That this brief contains 10,177 words within the meaning of Federal Rule of Appellate Procedure 32(a)(7)(B).  In making this certificate, I have relied on the "word count" feature of the word-processing system used to prepare the brief.

/s/ Anthony T. Kovalchick

ANTHONY T. KOVALCHICK
Deputy Attorney General

## CERTIFICATE OF SERVICE

I, Anthony T. Kovalchick, Deputy Attorney General, hereby certify that I

have electronically served the foregoing Brief for Appellees on the following

counsel of record by means of the CM/ECF System:

Matthew A. Feldman, Esquire
Pennsylvania Institutional Law Project
718 Arch Street
Suite 304 South
Philadelphia, PA 19106
mfeldman@pailp.org

Seven copies were also sent by first-class mail to the Clerk of the United States

Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

/s/ Anthony T. Kovalchick

ANTHONY T. KOVALCHICK
Deputy Attorney General

DATE: February 21, 2023