# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————

**No. 22-2399**

———————

ROY LEE WILLIAMS,

Plaintiff-Appellant,

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS and
JOHN E. WETZEL,

Defendants-Appellees.

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:21-cv-1248)
District Judge: Honorable Eduardo C. Robreno

———————————————————————

## REPLY BRIEF
## FOR APPELLANT ROY LEE WILLIAMS

———————————————————————

Matthew A. Feldman
PENNSYLVANIA INSTITUTIONAL LAW PROJECT
718 Arch Street, Suite 304S
Philadelphia, PA 19106
215-925-2966
mfeldman@pilp.org

*Counsel for Appellant*

March 14, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................... ii

INTRODUCTION............................................................................................. 1

ARGUMENT................................................................................................... 2

    I.    Secretary Wetzel is not entitled to qualified immunity on
          Mr. Williams's Eighth Amendment claim.............................................. 2

          A.    On this posture, it must be taken as true that Secretary
                  Wetzel was aware of Mr. Williams's history of mental illness
                  and suicidality.............................................................................. 2

          B.    *Porter* does not entitle Secretary Wetzel to qualified
                  immunity....................................................................................... 6

          C.    Neither state law nor DOC policy entitles Secretary Wetzel to
                  qualified immunity..................................................................... 10

    II.    The DOC is not entitled to summary judgment on Mr.
          Williams's ADA claim....................................................................... 13

          A.    The DOC misstates the law and mischaracterizes Mr.
                  Williams's ADA claim.............................................................. 13

           B.    The record establishes the DOC's deliberate indifference............. 16

    III.    The Court should reverse the dismissal of Mr. William's Fourteenth
          Amendment claim.......................................................................... 18

          A.    Under this Court's precedents, Mr. Williams's *pro se*
                  complaint adequately stated a procedural due process claim........ 18

          B.    Secretary Wetzel is not entitled to qualified immunity, and,
                  regardless, the Court should allow the District Court to
                  address the issue in the first instance....................................... 19

CONCLUSION.................................................................................................. 23

CERTIFICATE OF COMPLIANCE...................................................................... 25

CERTIFICATE OF BAR MEMBERSHIP............................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Berardelli v. Allied Servs. Inst. of Rehab. Med.,*
  900 F.3d 104 (3d Cir. 2018)................................................................... 15

*Bircoll v. Miami-Dade Cnty.,*
  480 F.3d 1072 (11th Cir. 2007).............................................................. 14

*Brown v. United States,*
  851 F.2d 615 (3d Cir. 1988).................................................................... 21

*City & Cnty. of San Francisco v. Sheehan,*
  575 U.S. 600 (2015)....................................................................... 14, 15

*Clark v. Coupe,*
  55 F.4th 167 (3d Cir. 2022)............................................................ 5, 8, 9, 10

*Clark v. Beard,*
  918 A.2d 155 (Pa. Commw. Ct. 2007)................................................... 10, 11

*Commonwealth v. Williams*
  846 A.2d 105 (Pa. 2004)...................................................................... 3, 5

*Estate of Bailey v. Cnty. of York,*
  768 F.2d 503 (3d Cir. 1985).................................................................... 21

*Estate of Smith v. Marasco,*
  318 F.3d 497 (3d Cir. 2003).................................................................... 20

*Farmer v. Brennan,*
  511 U.S. 825 (1994)............................................................................... 5

*Furgess v. Pa. Dep't of Corr.,*
  933 F.3d 285 (3d Cir. 2019)................................................................... 17

*Gillis v. Litscher,*
  468 F.3d 488 (7th Cir. 2006).................................................................. 23

*Grant v. City of Pittsburgh,*
  98 F.3d 116 (3d Cir. 1996)............................................................... 19–20

*Haberle v. Troxell,*
    885 F.3d 171 (3d Cir. 2018) ("*Haberle I*")........................... 13, 14, 15, 16

*J.V. ex rel. C.V. v. Albuquerque Pub. Sch.,*
    813 F.3d 1289 (10th Cir. 2016)................................................ 14

*Mitchell v. Horn,*
    318 F.3d 523 (3d Cir. 2003)..................................................... 20

*Montone v. City of Jersey City,*
    709 F.3d 181 (3d Cir. 2013)....................................................... 2

*Newland v. Reehorst,*
    328 F. App'x 788 (3d Cir. 2009)............................................... 20

*Palakovic v. Wetzel,*
    854 F.3d 209 (3d Cir. 2017)....................................................... 9

*Peterkin v. Jeffes,*
    855 F.2d 1021 (3d Cir. 1988)................................................... 17

*Plains All Am. Pipeline L.P. v. Cook,*
    866 F.3d 534 (3d Cir. 2017)..................................................... 19

*Porter v. Pa. Dep't of Corr.,*
    974 F.3d 431 (3d Cir. 2020)........................... 6, 7, 8, 9, 10, 21

*Prieto v. Clarke,*
    780 F.3d 245 (4th Cir. 2015)................................................... 18

*Sandin v. Conner,*
    515 U.S. 472 (1995)................................................................ 22

*Serrano v. Francis,*
    345 F.3d 1071 (9th Cir. 2003)................................................. 22

*Shoats v. Horn,*
    213 F.3d 140 (3d Cir. 2000)....................................... 18, 21, 22

*Shorter v. United States,*
    12 F.4th 366 (3d Cir. 2021)..................................................... 20

*Thomas v. Cumberland Cnty.,*
    749 F.3d 217 (3d Cir. 2014)....................................................... 2

*Thomas v. Independence Twp.*,
  463 F.3d 285 (3d Cir. 2006)..................................................... 20

*Werner v. Werner*,
  267 F.3d 288 (3d Cir. 2001).......................................................... 4

*Williams v. Sec'y Pa. Dep't of Corr.*,
  848 F.3d 549 (3d Cir. 2017).............................................. 11, 12, 18, 19, 21, 22

*Yarris v. Cnty. of Del.*,
  465 F.3d 129 (3d Cir. 2006).................................................... 20

*Young v. Martin*,
  801 F.3d 172 (3d Cir. 2015).................................................... 20

**Statutes**

42 U.S.C. § 12132................................................................. 13, 14

42 Pa. C.S. § 9711.................................................................... 11

61 Pa. C.S. § 4302.................................................................... 11

61 Pa. C.S. § 4303................................................................. 10, 11

## INTRODUCTION

Appellees' Response Brief underscores why Mr. Williams should prevail. It is as noteworthy for what it does ***not*** include as for what it does. Secretary Wetzel does not dispute the long line of authorities establishing that prolonged solitary confinement of the mentally ill violates the Eighth Amendment; instead, despite the procedural posture, he attempts to contest the fact of Mr. Williams's mental illness and his awareness thereof. He thus appears to concede that, if he was aware of Mr. Williams's history of mental illness and suicidality—and the Court must take as true that he was—he is not entitled to qualified immunity. As for Mr. Williams's ADA claim, rather than contend with the theory of liability Mr. Williams asserted in his complaint and addressed in his opening brief, the DOC posits a cramped interpretation of the ADA and mischaracterizes Mr. Williams's claim. Finally, with regard to Mr. Williams's Fourteenth Amendment procedural due process claim, Secretary Wetzel attempts to rely on out-of-circuit precedent and asks the Court to affirm based on qualified immunity despite the District Court never having addressed the issue.

For the reasons explained below and in Mr. Williams's opening brief, the Court should reverse the District Court and remand for further proceedings.

## ARGUMENT

### I. Secretary Wetzel is not entitled to qualified immunity on Mr. Williams's Eighth Amendment claim.

#### A. On this posture, it must be taken as true that Secretary Wetzel was aware of Mr. Williams's history of mental illness and suicidality.

Despite the fact that, as an appellate court reviewing a grant of summary judgment, this Court must construe the record in the light most favorable to Mr. Williams, draw all reasonable inferences in his favor, and refrain from making credibility determinations, Secretary Wetzel continues to contest the facts. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014); *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013). Mr. Williams has pointed to multiple sources of evidence in the record that support a finding that he was mentally ill, that he had a history of suicidality, and that the DOC and Secretary Wetzel were aware of these facts. *See* Appellant's Br. at 16–17. Rather than argue that he is entitled to judgment as a matter of law notwithstanding this evidence, Secretary Wetzel asks the Court to improperly draw inferences in his favor and ignore facts in the record. He even attempts to insert ***new*** facts into the record. The Court should not indulge these efforts to circumvent the summary judgment standard.

Take Mr. Williams's suicide attempt while in DOC custody. It is true that after he was stripped of his clothes and placed in a Psychiatric Observation Cell ("POC"), he told staff that he had faked the suicide attempt. JA113–115. Focusing solely on this fact, Secretary Wetzel suggests that the record is clear that the suicide attempt was indeed faked. *See* Resp. Br. at 24. Secretary Wetzel asks the Court to

believe what Mr. Williams said at the time—that he had faked the suicide attempt—and ignore what he testified to during his deposition—that it was real but he claimed it was fake in a desperate attempt to get out of the POC. JA113–115. But, on this posture, the Court must take as true that the suicide attempt was genuine. While acknowledging that a DOC psychiatrist offered Mr. Williams a prescription for Prozac, *see* Resp. Br. at 24, Secretary Wetzel ignores the obvious inference to be drawn from this fact—that the psychiatrist believed the suicide attempt to be genuine.[1] The jury might ultimately choose not to draw that inference, but, on this posture, the Court must.

As for the declarations of Drs. Crown and Fox, which document Mr. Williams's mental illness and cognitive impairments, this Court must take as true Mr. Williams's sworn statement that the declarations were provided to the DOC. *See* JA051–061; JA104; JA243–244. Implicitly acknowledging this, Secretary Wetzel now seeks to rebut this evidence by introducing new evidence, in the form of select passages from the Supreme Court of Pennsylvania's opinion in Mr. Williams's PCRA appeal. *See* Resp. Br. at 26–27 (citing *Commonwealth v. Williams*, 846 A.2d 105 (Pa. 2004)). Secretary Wetzel points to three statements made by the Supreme Court,

---

[1] Secretary Wetzel's assertion that "there is ***nothing*** in the record which suggests that Williams has ***ever*** needed or received [psychotropic] medications" is thus blatantly false. *See* Resp. Br. at 24 n.3 (emphasis in original).

which purport to summarize the PCRA Court's conclusions about the testimony of Drs. Crown and Fox. *See* Resp. Br. at 26–27.[2] This effort is unavailing.

As Secretary Wetzel concedes, if it is true that the PCRA Court did not credit the testimony of Drs. Fox and Crown, it could only be relevant here to the extent Secretary Wetzel was aware of the PCRA Court's findings. *See* Resp. Br. at 26 n.6 (acknowledging that what matters here is what Secretary Wetzel knew about Mr. Williams's mental illness). But there is no evidence in the record—and no reason to believe—that Secretary Wetzel was aware of the PCRA opinion in Mr. Williams's case. Secretary Wetzel instead seems to tacitly ask this Court to ***infer*** that he was aware of the PCRA Court's findings, but, as the party seeking summary judgment, he is entitled to no such inference. To the contrary, Mr. Williams is entitled to the inference that Secretary Wetzel was ***not*** aware of the PCRA Court's findings.

Moreover, even if Secretary Wetzel had been aware of the PCRA opinion, it is far from clear that he would have been justified in drawing the conclusion that Mr. Williams was not mentally ill. Indeed, the Supreme Court's opinion includes excerpts from the testimony of one of the prosecution's experts, Dr. Sadoff, which demonstrate

---

[2] Secretary Wetzel claims this Court can take judicial notice of the Supreme Court's statements regarding the PCRA Court's conclusions about the testimony of Drs. Crown and Fox. Resp. Br. at 26 n.6. However, since neither opinion was part of the record before the District Court in this case and they long predated the District Court's judgment, it is not clear that judicial notice is appropriate here. *See Werner v. Werner*, 267 F.3d 288, 294–95 (3d Cir. 2001) (explaining that this Court generally "may not consider material or purported evidence which was not brought upon the record in the trial court" and implying that the Court may only "take judicial notice of filings or developments in related proceedings which take place ***after*** the judgment appealed from") (emphasis added).

that even he thought that Mr. Williams's traumatic childhood had led to several psychological and cognitive problems, including depression, poor impulse control, lack of insight, and reasoning deficits. *See Commonwealth v. Williams*, 846 A.2d at 117.

Finally, regardless of what the PCRA opinion says, Secretary Wetzel does not point to any authority for the proposition that he would have been entitled to rely on that court's findings, made in the context of a legal proceeding unrelated to Mr. Williams's conditions of confinement, over the other evidence of Mr. Williams's mental illness, including his suicide attempt; pre-incarceration history of mental illness; "C" designation on the Mental Health Roster; reports of depression, anxiety, and auditory hallucinations; and diagnosis with a psychiatric disability. *See* JA125–126; JA139; JA205; JA243; JA252; JA294. Indeed, the Eighth Amendment required that Secretary Wetzel not be deliberately indifferent to a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Selectively ignoring evidence of Mr. Williams's mental illness—and the resulting risks prolonged solitary confinement posed for him—and, instead, only crediting purported evidence that Mr. Williams was not mentally ill would have been textbook deliberate indifference.[3]

---

[3] Secretary Wetzel's assertion to the contrary notwithstanding, *see* Resp. Br. at 23 n.2, Mr. Williams's clarification of the nature of the Eighth Amendment claim he asserted in his complaint—a conditions-of-confinement claim—is by no means a concession that the DOC provided him with adequate treatment for his mental illness. *See* Appellant's Br. at 25 n.6. The adequacy of the mental health treatment, or lack thereof, Mr. Williams received in the DOC is simply not at issue in this case. *Cf. Clark v. Coupe*, 55 F.4th 167, 177 (3d Cir. 2022).

In sum, in light of the evidentiary record and the summary judgment standard, the question before the Court when analyzing Secretary Wetzel's qualified immunity defense to Mr. Williams's Eighth Amendment claim is whether an incarcerated person with a known history of mental illness and suicidality had a clearly established right not to be subjected to prolonged, indefinite solitary confinement by an official who was aware of that history and the risks solitary confinement posed to him. In his opening brief, Mr. Williams explained why, based on this Court's precedents, the DOJ's communications to Secretary Wetzel on the subject, and a decades-long line of district court cases, the answer is yes. Appellant's Br. at 25–31. While Secretary Wetzel disputes the framing of the right at issue (by asking the Court to draw improper inferences and ignore evidence in the record), he, crucially, does ***not*** dispute that, so framed, the right was clearly established. This Court should not indulge Secretary Wetzel's request to reframe the record in defiance of the summary judgment standard and should, instead, hold that he is not entitled to qualified immunity.

**B.**    ***Porter* does not entitle Secretary Wetzel to qualified immunity.**

In attempting to rely on this Court's decision in *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431 (3d Cir. 2020), in which a death-sentenced prisoner with no known history of pre-existing mental illness brought an Eighth Amendment challenge to his prolonged solitary confinement, as the basis for Secretary Wetzel's supposed entitlement to qualified immunity, Secretary Wetzel repeats the mistakes made by the District Court. *Porter* does not control here because, first, unlike this case, *Porter*

did not concern the prolonged solitary confinement of an individual with known, pre-existing mental illness; and, second, there is not a single piece of evidence in the record here that explains how or why Mr. Williams's death sentence could have justified his placement in solitary confinement.

*Porter*, like this case, was an as-applied challenge to one individual's prolonged solitary confinement on death row. *See Porter*, 974 F.3d at 440. In neither case was the plaintiff "making a broader claim that the conditions for all death row inmates violate[d] the Eighth Amendment." *Id.* The *Porter* Court repeatedly stressed that its holding was limited to the record before it, regarding the effects of solitary confinement on one individual—an individual with no known pre-existing mental illness—rather than a pronouncement on the constitutionality of solitary confinement of all individuals with death sentences. *See id.* at 444 n.8, 447 n.12. Secretary Wetzel's assertion that, "[a]s this Court explained in *Porter*, the unconstitutionality of solitary confinement for death-row inmates was not clearly established prior to September 1, 2020" thus misstates the *Porter* holding, as does the District Court's similar statement. *See* Resp. Br. at 21 (citing *Porter*, 974 F.3d at 450–51); JA031 ("The Third Circuit held that Eighth Amendment rights with respect to conditions of solitary confinement on death row are not 'clearly established.'") (citing *Porter*, 974 F.3d at 450–51).

A holding as broad as Secretary Wetzel's and the District Court's gloss on *Porter* would be impossible to square with Eighth Amendment doctrine, which requires "a heavily fact-specific inquiry, where the particular characteristics of the

prisoner raising the challenge are taken into consideration." *Clark v. Coupe*, 55 F.4th 167, 183 (3d Cir. 2022). In the same passage from *Porter* cited by Secretary Wetzel and the District Court, the Court made clear that had the plaintiff there, like Mr. Williams, "had specific known mental health issues pre-assignment to solitary confinement," the analysis would have been different. *Porter*, 974 F.3d at 450. Indeed, in granting qualified immunity in *Porter*, the cases the Court distinguished all involved "specific allegations in addition to placement in solitary confinement that gave rise to a potential Eighth Amendment violation." *Id.* at 451. The fact that the *Porter* plaintiff was on death row was thus not the only fact that distinguished his situation from the precedents on which he tried to rely, and there is no reason to think his death sentence was essential to the Court's denial of qualified immunity. To the contrary, the better interpretation is that the defendants were entitled to qualified immunity there because, unlike the authorities to which the plaintiff pointed, his solitary confinement did not involve "specific additional allegations in addition to placement in solitary confinement" such that the defendants would have been on notice of the unconstitutionality of their actions. *Id.* at 450. The same cannot be said here in light of Mr. Williams's known mental illness and suicidality.

Compounding his error in disregarding the evidence of Mr. Williams's mental illness, Secretary Wetzel instead fixates exclusively on the fact of Mr. Williams's death sentence. But he does not—and cannot—point to any evidence in the record that would explain why Mr. Williams's death sentence justified his placement in solitary confinement for twenty-six years. While courts can consider the purpose

8

behind prison officials' conduct when evaluating an Eighth Amendment claim, *id.* at 446, this Court has declined to do so in cases involving individuals with mental illness placed in solitary confinement. *See Clark*, 55 F.4th at 177 n.9 (noting that, in holding there was a viable Eighth Amendment claim in *Palakovic v. Wetzel*, 854 F.3d 209, 225–26 (3d Cir. 2017), the Court did not consider the reasons Mr. Palakovic was repeatedly placed in solitary confinement); *Clark*, 55 F.4th at 182 (defining the right at issue without reference to the reason the plaintiff had been placed in solitary confinement).

To the extent the purpose behind Mr. William's placement can be considered, to do so, the Court would have to analyze record evidence to determine the legitimacy of the purported penological purpose Mr. Williams's twenty-six years in solitary confinement served. *See Porter*, 974 F.3d at 446. But, to repeat, there is absolutely nothing in the record to explain why Secretary Wetzel believed Mr. Williams—or death-sentenced prisoners generally—needed to be in solitary confinement. This void further distinguishes this case from *Porter*, where, unlike here, the record included the defendants' purported justifications for keeping individuals with death sentences in solitary confinement. *See id.* at 446–47. While the *Porter* Court rejected the defendants' asserted justifications in evaluating whether they had violated the Eighth Amendment, *id.*, those purported justifications may have been part of the "fact pattern[]" the Court considered in holding the defendants were entitled to qualified immunity, *id.* at 450–51. In the absence of any such record evidence here, Mr. Williams is entitled to the inference that his twenty-six years in solitary confinement

served no legitimate penological purpose at all, compelling the conclusion that Secretary Wetzel violated his clearly established Eighth Amendment rights. *See Clark*, 55 F.4th at 178 ("Established law . . . prohibited prison officials from imposing conditions that threatened a substantial risk of serious harm and inflicted such harm for no penological reason."); *Porter*, 974 F.3d at 446 ("The Eighth Amendment prohibits punishments without penological justification.").

### C. Neither state law nor DOC policy entitles Secretary Wetzel to qualified immunity.

Secretary Wetzel's suggestions that he is entitled to qualified immunity because he was following a state statute—which unambiguously did ***not*** mandate Mr. Williams's permanent placement in solitary confinement—and a DOC policy—which Secretary Wetzel had unilateral authority to change—similarly fall flat.

The statute at issue, 61 Pa. C.S. § 4303, has no bearing on this case. In relevant part, it states that "[u]pon receipt of the [execution] warrant, the secretary shall, until infliction of the death penalty or until lawful discharge from custody, keep the inmate in solitary confinement." 61 Pa. C.S. § 4303. It thus mandates solitary confinement only for those death-sentenced prisoners for whom there is a valid execution warrant, leaving the housing of death-sentenced prisoners without a valid execution warrant, like Mr. Williams, entirely to the DOC's discretion. *See Porter*, 974 F.3d at 445 n.9 (stating that an individual without a valid, signed execution warrant "remains in the CCU as a matter of the Department of Corrections' discretion, not because of any statutory requirement"); *Clark v. Beard*, 918 A.2d 155, 160 (Pa. Commw. Ct. 2007) ("The Department exercises its discretion by keeping inmates convicted of a capital

offense in the Capital Case Unit while their death sentences are litigated."). Indeed, if § 4303, which is still on the books, mandated solitary confinement for all individuals in DOC custody with death sentences, the *Reid* settlement agreement could not have happened and Mr. Williams and other individuals with death sentences would still be in solitary confinement. *See* Appellant's Br. at 6; Resp. Br. at 4–6; JA014–015.

It is not even accurate that § 4303 mandated Mr. Williams's initial placement in solitary confinement, *see* Resp. Br. at 21, because when he first entered DOC custody, there necessarily would have been a direct appeal of his sentence pending and there thus could not have been a valid execution warrant. *See* 42 Pa. C.S. § 9711(h)(1) (mandating automatic review of all death sentences by the Supreme Court of Pennsylvania); 42 Pa. C.S. § 9711(i) (describing procedure for transmittal of record of death sentence to the governor for the signing of the warrant); 61 Pa. C.S. § 4302(a)(1) (describing procedure for issuance of execution warrant); *see also Clark v. Beard*, 918 A.2d at 167 (Friedman, J., dissenting). However, regardless of whether Mr. Williams's initial placement in solitary confinement was mandated by statute, what matters here is that the decision to keep him in solitary confinement for the next twenty-six years was solely a matter of DOC policy, over which Secretary Wetzel, as the top-ranking official in the DOC, had complete discretion.

Secretary Wetzel's assertion that the fact that Mr. Williams's prolonged solitary confinement "was fully consistent with the policy in effect during the relevant period of time confirms Secretary Wetzel's entitlement to qualified immunity," Resp. Br. at 21, is incorrect, and his reliance on *Williams v. Sec'y Pa. Dep't of Corr.*, 848

F.3d 549 (2017) is misplaced. Contrary to Secretary Wetzel's interpretation, *Williams* stands for the proposition that the fact that an official's actions are in accordance with an administrative policy does ***not*** automatically entitle them to qualified immunity. *See Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d at 571 ("State policy cannot undermine a constitutional interest."). As the Court explained, regarding the procedural due process claim at issue there, "we do not suggest that the profound liberty concerns raised by Plaintiffs' continued confinement on death row can be overcome by a carefully worded prison policy." *Id.* This makes good sense—especially when, as here, the defendant is the policymaker. A contrary rule—that acting consistent with policy entitles an official to qualified immunity—would essentially amount to a form of absolute immunity for policymakers. If a policymaker wanted to violate the Constitution, all they would have to do is codify their desired action in a policy and, *voilà*, they would be immune from liability.

Indeed, in *Williams*, the policy was only relevant to the Court's qualified immunity analysis because "the case law in existence . . . did not adequately inform Defendants that the policy ran counter to Plaintiffs' protected liberty interests . . . [and] the limited precedent that existed on the topic suggested the contrary." *Id.* Here, in contrast, as discussed at length in Mr. Williams's opening brief and as Secretary Wetzel has not even attempted to refute, there was ample authority clearly establishing that keeping someone with a known history of mental illness and suicidality in prolonged, indefinite solitary confinement violated the Eighth Amendment. *See* Appellant's Br. at 25–31. Therefore, Secretary Wetzel's attempts to

sidestep liability should be rejected, and this Court should hold that he is not entitled to qualified immunity.

## II.    The DOC is not entitled to summary judgment on Mr. Williams's ADA claim.

### A.    The DOC misstates the law and mischaracterizes Mr. Williams's ADA claim.

As explained in Mr. Williams's opening brief, the DOC discriminated against him in violation of Title II of the ADA by failing to provide reasonable accommodations to ameliorate the detrimental effects solitary confinement had on him in light of his psychiatric disabilities. *See* Appellant's Br. at 36–39. Rather than dispute this, the DOC attempts to recast his claim as being solely about denial of the benefits of services, programs, or activities and, in doing so, incorrectly implies that such denial is the only form of liability under Title II. *See* Resp. Br. at 29–32.

Denial of the benefits of a public entity's services, programs, or activities is just one of three ways of establishing liability under Title II. Liability under Title II is established when a qualified individual with a disability is, "by reason of his disability," (1) "excluded from participation in . . . the services, programs, or activities of a public entity," (2) "denied the benefits of the services, programs, or activities of a public entity," or (3) "subjected to discrimination by [a public entity]." 42 U.S.C. § 12132; *Haberle v. Troxell*, 885 F.3d 171, 178 (3d Cir. 2018) ("*Haberle I*").

This Court's analysis in *Haberle I* makes clear that Title II's "subjected to discrimination" prong is distinct from its "services, programs, or activities" prongs and that discrimination under the ADA does not require exclusion from or denial of

the benefits of services, programs, or activities. *See id.* at 179–80. In *Haberle I*, the Court "consider[ed] whether arrests made by police officers are services, programs, or activities of a public entity, ***or alternatively***, whether police officers may be liable under the ADA for subjecting a qualified individual to discrimination while effectuating an arrest." *Id.* at 179 (cleaned up) (emphasis added). The Court concluded that it did not need to resolve the issue of "whether police fieldwork and arrests can rightly be called 'services, programs, or activities of a public entity' . . . because § 12132 is framed in the alternative and we can look instead to the second phrase, namely, to whether the arrestee was 'subjected to discrimination' by the police." *Id.* at 180.

This analysis is consistent with that of the Supreme Court and other Courts of Appeals. *See City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 609–10 (2015) (distinguishing between exclusion from or denial of the benefits of services, programs, or activities, on the one hand, and discrimination, on the other); *J.V. ex rel. C.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016) ("[C]ourts have recognized two types of claims: (1) exclusion from or denial of benefits and (2) discrimination."); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1085 (11th Cir. 2007) ("[T]he final clause of § 12132 protects qualified individuals with a disability from being 'subjected to discrimination by any such entity,' and is not tied directly to the 'services, programs, or activities' of the public entity.").

As explained in Mr. Williams's opening brief, the "subjected to discrimination" prong is broad and includes failing to provide reasonable accommodations for a

plaintiff's disabilities. *See* Appellant's Br. at 36–37 (citing *Haberle I*, 885 F.3d at 180); *see also Sheehan*, 575 U.S. at 609–10 (explaining that failure to provide reasonable accommodations could constitute discrimination irrespective of whether any services, programs, or activities were involved); *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) ("An essential feature of th[e ADA's] 'prohibition against discrimination' is, of course, the duty to make 'reasonable accommodations' and 'reasonable modifications.'").[4]

In focusing exclusively on denial of the benefits of services, programs, or activities, the DOC thus misstates the law and mischaracterizes Mr. Williams's claim, ignoring not only the arguments in his opening brief but also the allegations in his complaint that the DOC engaged in unlawful disability discrimination by failing to provide him with reasonable accommodations to ameliorate the negative effects of prolonged solitary confinement. *See* JA045, ¶ 7 ("[T]he prison is required to reasonably modify its policies, practices, and procedures when necessary, as here, to avoid discrimination against prisoners with [serious mental illnesses or intellectual disabilities]. . . . Thus, prisoners with active death-sentences with [serious mental illnesses or intellectual disabilities] cannot be placed in indefinite solitary confinement without showing that it is necessary to make an exception."); JA046, ¶ 10 (alleging that solitary confinement can exacerbate mental illness and, in fact, did so with respect to Mr. Williams); JA048, ¶ 21 (citing the DOJ findings letter and

---

[4] The terms "reasonable modifications" and "reasonable accommodations" are used interchangeably. *See Berardelli*, 900 F.3d at 117–18 (collecting cases); *Haberle I,* 885 F.3d at 181 n.11.

describing the deleterious effects of solitary confinement on individuals with serious mental illness); JA049, ¶ 26 (alleging that the DOC "failed to reasonably modify policies, practices, and procedures necessary for the DOC to avoid discrimination on the basis of disability").

### B. The record establishes the DOC's deliberate indifference.

A reasonable jury could conclude that the DOC was deliberately indifferent because it was aware that its policy mandating automatic, indefinite solitary confinement of all individuals with death sentences "made it substantially likely that disabled individuals would be denied their federally protected rights under the ADA." *See Haberle I*, 885 F.3d at 181. As explained in the discussion of Mr. Williams's ADA and Eighth Amendment claims in his opening brief, "the risk of cognizable harm" here "was so great and so obvious that the risk and the failure to respond [ ] alone" demonstrate deliberate indifference. *See id.*; Appellant's Br. at 13–18, 40–41. In addition, a reasonable jury could conclude that the 2014 DOJ letter is evidence that the DOC's "policies caused a failure to adequately respond to a pattern of past occurrences of injuries like [Mr. Williams's]." *See Haberle I*, 885 F.3d at 181; JA078–083; Appellant's Br. at 40.

The DOC's arguments to the contrary are unavailing. First, contrary to the DOC's assertion, the DOJ letter explicitly included death-sentenced prisoners housed on the CCU within the scope of its investigation. *See* JA062 (identifying the scope of the DOJ's investigation as "the [DOC's] use of solitary confinement on prisoners with serious mental illness [ ] and intellectual disabilities"); JA066 (identifying the CCU

16

as one of the "types of solitary confinement units" in the DOC). Second, that the DOC ultimately opted to end solitary confinement of death-sentenced prisoners does not preclude a finding that it was deliberately indifferent during the years preceding that policy change. Indeed, it took five years after the DOJ letter—and a class action lawsuit—for the DOC to end death-row solitary confinement. A jury could easily conclude the DOC was deliberately indifferent during the years preceding the policy change. Finally, the DOC's assertion that Mr. Williams's death sentence placed him "in a different category than most of the other inmates who were (allegedly) suffering from mental illnesses," Resp. Br. at 35, cannot be squared with this Court's precedents, which make clear that, when evaluating an ADA claim related to solitary confinement, the reason the plaintiff was placed in solitary confinement is irrelevant. *See Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 291 (3d Cir. 2019).

Furthermore, the DOC's insinuation that Mr. Williams was "'psychologically disturbed' because of [his] death sentence[]," rather than suffering from "pre-existing mental illness that need[ed] to be addressed or accommodated," has no basis in the record. *See* Resp. Br. at 35 (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1030 (3d Cir. 1988)). To the contrary, the record and procedural posture require the Court take as true that Mr. Williams had pre-existing mental illness. Tellingly, the DOC seems to concede that, were that true, it would have had a duty to provide reasonable accommodations and that a failure to do so would have constituted deliberate indifference. *See* Resp. Br. at 34–35.

17

**III.   The Court should reverse the dismissal of Mr. Williams's Fourteenth Amendment claim.**

   **A.   Under this Court's precedents, Mr. Williams's *pro se* complaint adequately stated a procedural due process claim.**

By keeping Mr. Williams in solitary confinement for twenty-six years, with no meaningful review or opportunity to be heard, Secretary Wetzel violated Mr. Williams's Fourteenth Amendment right to procedural due process. Secretary Wetzel does not contest the lack of procedural safeguards and, instead, only disputes that Mr. Williams had a liberty interest in avoiding such confinement.

Tellingly, in contesting the viability of Mr. Williams's procedural due process claim, Secretary Wetzel relies primarily on an out-of-circuit case. *See* Resp. Br. at 38–39 (citing *Prieto v. Clarke*, 780 F.3d 245, 253–55 (4th Cir. 2015)). In so doing, Secretary Wetzel disregards three crucial facts about the law applicable to this case. First, unlike the Fourth Circuit, this Court has made clear that, when applying the "atypical and significant hardship" standard, the proper comparator is the general prison population. *See Williams v. Sec'y Pa. Dep't Corr.*, 848 F.3d at 564 ("The terms 'ordinary' and 'routine' direct us to use a general metric (the general population), not one specific to a particular inmate."); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000). Second, unlike in Virginia, where the *Prieto* plaintiff was sentenced to death, Pennsylvania law did not require that Mr. Williams be kept in solitary confinement; rather, it was entirely a matter of Secretary Wetzel's discretion. *See supra* § I.C; *cf. Williams v. Sec'y Pa. Dep't Corr.*, 848 F.3d at 569 n.131 (citing cases from other jurisdictions regarding death-row solitary confinement mandated by state law). And,

third, under this Court's precedents, it is the conditions of confinement, not the purported reasons for the imposition of the conditions, that determine whether a liberty interest is implicated. *Williams v. Sec'y Pa. Dep't Corr.*, 848 F.3d at 565–66.

Applying these principles, the conclusion that Mr. Williams's prolonged solitary confinement triggered due process protections is unavoidable. *See* Appellant's Br. at 45–47.

**B.     Secretary Wetzel is not entitled to qualified immunity, and, regardless, the Court should allow the District Court to address the issue in the first instance.**

Despite the fact that the District Court never addressed whether Secretary Wetzel is entitled to qualified immunity from Mr. Williams's Fourteenth Amendment claim, Secretary Wetzel now asks this Court to address qualified immunity in the first instance. *See* JA005–006 (dismissing Mr. Williams's Fourteenth Amendment claim *sua sponte* for failure to state a claim, before the complaint was served on the defendants, and, thus, without addressing qualified immunity); Resp. Br. at 40. The Court should decline to do so because, while the Court "may affirm a district court for any reason supported by the record, . . . generally, in the absence of exceptional circumstances, [the Court] decline[s] to consider an issue not passed upon below." *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 545 (3d Cir. 2017) (cleaned up). No such exceptional circumstances are present here.

To the contrary, the fact that the claim at issue was dismissed based solely on Mr. Williams's complaint, without the benefit of discovery, further counsels against this Court addressing Secretary Wetzel's qualified immunity defense. *See Grant v.*

*City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of any assertion of qualified immunity is a careful examination of the record (preferably by the district court)."); *see also Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) ("[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."). For qualified immunity to be appropriate based on the complaint alone, the defendant's entitlement to immunity must be "established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006). Resolution of Secretary Wetzel's qualified immunity defense is particularly inappropriate at this stage because the determination of whether a liberty interest exists is necessarily "fact-intensive." *Mitchell v. Horn*, 318 F.3d 523, 532–33 (3d Cir. 2003).

Except where it is "obvious from the face of the complaint that qualified immunity applies," this Court declines to address qualified immunity in the first instance based on the pleadings. *Shorter v. United States*, 12 F.4th 366, 375 n.9 (3d Cir. 2021). Moreover, regardless of the procedural posture, when defendants ask this Court to address qualified immunity before the district court has had an opportunity to do so, the Court has regularly remanded for the district court to do so in the first instance. *See, e.g., Young v. Martin*, 801 F.3d 172, 182 (3d Cir. 2015); *Yarris v. Cnty. of Del.*, 465 F.3d 129, 140 (3d Cir. 2006); *Estate of Smith v. Marasco*, 318 F.3d 497,

511 (3d Cir. 2003); *Estate of Bailey v. Cnty. of York*, 768 F.2d 503, 508 n.5 (3d Cir. 1985).[5]

This is not one of the rare cases in which this Court should address qualified immunity before the district court has done so. Secretary Wetzel's entitlement to qualified immunity is far from obvious here because this case differs from the cases on which he relies in a crucial respect: neither case involves an individual, like Mr. Williams, with a known history of mental illness and suicidality. *See* Resp. Br. at 40 (citing *Porter*, 974 F.3d at 450–51; *Williams v. Sec'y Pa. Dep't of Corr,*, 848 F.3d at 570–72). In holding that defendants were entitled to qualified immunity in *Williams v. Sec'y Pa. Dep't Corr.*—where the plaintiffs did not have any known, pre-existing mental illness—the Court explained that, "although the precedent that existed when Defendants continued Plaintiffs' confinement on death row should have suggested caution, it was not sufficient to inform Defendants that their conduct violated clearly established law." 848 F.3d at 570; *see also id.* at 572 (explaining that the Court's holding in *Shoats* "should have raised concerns and counseled caution"). In *Shoats*, the Court had "no difficulty concluding that eight years in administrative custody, with no prospect of immediate release in the near future," was sufficient to establish a liberty interest for an individual without pre-existing mental illness. 213 F.3d at

---

[5] Although, in *Porter*, this Court addressed qualified immunity without the district court having done so, there, unlike here, there was a full record, as the district court had already ruled on the merits of the plaintiff's claims on summary judgment. *See Porter*, 974 F.3d at 436, 448–49; *but see Brown v. United States*, 851 F.2d 615, 620 (3d Cir. 1988) ("[A]lthough it is within our power to [address qualified immunity in the first instance], it would be inappropriate for us to decide this question on appeal, even if the record provided a sufficient basis for its resolution.")

144. If that precedent was enough to "raise[] concerns and counsel[] caution" in *Williams v. Sec'y Pa. Dep't Corr.*, then Mr. Williams's history of mental illness surely pushes it over the line to providing the fair warning that is sufficient to overcome a qualified immunity defense.

Indeed, it is obvious from the Supreme Court's language in *Sandin* that characteristics of the plaintiff and the effects of the challenged conditions on him are relevant to the due process analysis: "[S]tate-created liberty interests c[an] arise only when a prison's action impose[s] an 'atypical and significant ***hardship on the inmate*** in relation to the ordinary incidents of prison life.'" *Shoats*, 213 F.3d at 143 (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)) (emphasis added). One cannot evaluate the degree of hardship conditions impose on an incarcerated person without considering relevant factors about that individual. Surely, housing a physically disabled individual in a cell with a toilet they were unable to use would be an "atypical and significant hardship" for that individual, while housing a non-disabled individual in the same cell would not be. *See, e.g,*, *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003) ("[The plaintiff's] disability—coupled with administrative segregation in [a unit] that was not designed for disabled persons—gives rise to a protected liberty interest … [because] the conditions imposed on [him] …, ***by virtue of his disability***, constituted an atypical and significant hardship in him.") (emphasis added). Likewise, in light of Secretary Wetzel's knowledge about the harms of prolonged solitary confinement for individuals with mental illness, he should have been well aware those conditions imposed an atypical and significant hardship on Mr. Williams.

Moreover, for the same reasons it has long been clearly established that prolonged solitary confinement of the mentally ill violates the Eighth Amendment, *see* Appellant's Br. at 25–33, Secretary Wetzel should have been on notice that such confinement triggered due process protections as well. *See Gillis v. Litscher*, 468 F.3d 488, 495 (7th Cir. 2006) (finding it "inevitable" that the plaintiff's procedural due process claim should survive summary judgment because his Eighth Amendment claim challenging the same conditions survived); *id.* at 492 (explaining that there exist conditions that trigger a due process liberty interest without violating the Eighth Amendment but not the other way around).

The Court should therefore reverse the *sua sponte* dismissal of Mr. Williams's Fourteenth Amendment claim and remand for discovery. Only to the extent that the Court finds deficiencies in the pleading of Mr. Williams's due process claim should it instead instruct the District Court to allow him to file an amended complaint.

## CONCLUSION

For the foregoing reasons, as well as those in Mr. Williams's opening brief, this Court should reverse the District Court's entry of summary judgment on Mr. Williams's Eighth Amendment and ADA claims, reverse its dismissal of his Fourteenth Amendment claim, and remand the case for further proceedings.

Respectfully submitted,

*s/ Matthew A. Feldman*
Matthew A. Feldman (PA 326273)
PENNSYLVANIA INSTITUTIONAL LAW PROJECT
718 Arch Street, Suite 304S
Philadelphia, PA19106
215-925-2966
mfeldman@pilp.org

Dated: March 14, 2023

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(g) and L.A.R. 31.1(c), I certify that this brief:

(i)     complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,285 words, excluding the parts exempted by Fed. R. App. P. 32(f);

(ii)     was scanned for viruses prior to submission and no virus was detected; and

(iii)     is identical to the paper copies that I will cause to be delivered to the Court within the required time.


## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to L.A.R. 28.3(d), I certify that I am a member in good standing of the bar of the Third Circuit.


*s/ Matthew A. Feldman*
Matthew A. Feldman
PENNSYLVANIA INSTITUTIONAL LAW PROJECT

Dated: March 14, 2023

**CERTIFICATE OF SERVICE**

I certify that on March 14, 2023, this brief was served on counsel for Appellees, Anthony Kovalchick, using the Court's CM/ECF system.


*s/ Matthew A. Feldman*
Matthew A. Feldman
PENNSYLVANIA INSTITUTIONAL LAW PROJECT

Dated: March 14, 2023